OHIO STATE BAR ASSOCIATION *v.* PESKIN.

[Cite as *Ohio State Bar Assn. v. Peskin,* 125 Ohio St.3d 244, 2010-Ohio-1811.]

*Attorney misconduct — Conduct prejudicial to the administration of justice — Conduct adversely reflecting on attorney's fitness to practice law — Two-year suspension with 18 months stayed on conditions, including probation.*

(No. 2009-2009 — Submitted December 16, 2009 — Decided April 29, 2010.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 08-050.

_____

**Per Curiam**.

**{¶ 1}** Respondent, Lawrence Frederick Peskin of Cleveland, Ohio, Attorney Registration No. 0059391, was admitted to the practice of law in Ohio in 1992. For violations of the Rules of Professional Conduct arising from his possessing and using crack cocaine, the Board of Commissioners on Grievances and Discipline recommends that we impose a two-year suspension, stayed upon conditions. We accept the board's findings of misconduct. However, we conclude that respondent's conduct, his failure to acknowledge the seriousness of his misconduct, and his obvious resentment over the consequences of his misconduct warrant an actual suspension from the practice of law. Accordingly, we impose a two-year suspension with 18 months stayed upon the conditions recommended by the board.

**Misconduct**

**{¶ 2}** Relator, Ohio State Bar Association, charged respondent with professional misconduct in violation of Prof.Cond.R. 8.4(d) (prohibiting conduct that is prejudicial to the administration of justice) and 8.4(h) (prohibiting any conduct that adversely reflects on the lawyer's fitness to practice law).

**{¶ 3}** The parties stipulate that on June 29, 2007, respondent was arrested in Brookpark, Ohio, and was subsequently indicted by a Cuyahoga County grand jury for possession of crack cocaine and resisting arrest. Respondent pleaded guilty to both charges and was placed in and successfully completed an intervention-in-lieu-of-conviction program that resulted in dismissal of all charges against him.

**{¶ 4}** At the panel hearing, respondent testified that he obtained a doctorate in psychology and worked as a licensed psychologist for approximately eight years before attending law school. At the time of his arrest in 2007, respondent was a lead trial attorney in large medical-malpractice actions.

**{¶ 5}** Respondent admitted he had used marijuana occasionally since age 15. After an acquaintance offered him crack cocaine in 2004, he used it approximately one weekend a month—15 to 20 times—over an 18-month period. He attributed his cocaine use to a number of personal difficulties including his ex-wife's terminal cancer, his teenage daughter's difficulty handling that diagnosis, and his second wife's serious illnesses.

**{¶ 6}** Respondent claimed that he was never impaired while working and that his drug use did not interfere with the representation of his clients. But his admitted use of marijuana and purchase of crack cocaine just days before he filed an important motion demonstrate that his conduct did place his clients at risk. Respondent criticized his former employer for notifying his clients of his arrest and implied that his conduct was not serious enough to warrant the subsequent termination of his employment. Instead, he attributed his firing to a personality clash with a majority partner and the firm's desire to retain his share of the fees for two very lucrative cases.

**{¶ 7}** Respondent testified that as part of his intervention-in-lieu-of-conviction program, he reported to a probation officer each month for one year and submitted to random drug testing and a substance-abuse assessment. While

he claimed that both that assessment and a separate assessment completed by Dr. Lee Horowitz determined that he did not have a substance-abuse problem, he did not submit any documents to support this contention.

{¶ 8} After his arrest, respondent voluntarily contacted the Ohio Lawyers Assistance Program ("OLAP") and began to attend Alcoholics Anonymous ("AA") meetings. After approximately one year, he separated from OLAP under less than amicable circumstances. He also stopped attending AA meetings, claiming that the program is outdated and ineffective. He further rejected AA's focus upon submission to a higher power and its requirement that participants admit that they have a substance-abuse problem, which he does not believe he has.

{¶ 9} As part of the disciplinary investigation, respondent submitted to a psychological evaluation with Arthur L. Rosenbaum, M.D. Although Dr. Rosenbaum did not specifically diagnose an addiction to illegal substances, he did report that respondent has used cocaine and marijuana at various times throughout his life and remains at risk to return to such conduct. Specifically, Dr. Rosenbaum stated: "Mr. Peskin has been a user of forbidden substances most of his life. His use has been minimal, according to him. Although his tendency observed several times in this session and detailed above, to attribute cause for his actions to external circumstances and to others and emphasis of his role as victim are important clues to his character composition, I do not believe on the basis of the information available to me that his drug use, history of failed relationships in his personal and professional lives or personality characteristics indicated by his denial and the evidence that he is able to ignore the dictates of his conscience rise to the level of a diagnosable mental illness. There is no information available to me that his work with clients has been compromised. I do believe that he will be best served if there is ongoing monitoring of his sobriety for an indefinite period.

Any route that leads to forbidden pleasure once opened remains available and by history he is a person who has been vulnerable."

{¶ 10} The parties stipulate, and we agree, that clear and convincing evidence establishes that respondent's conduct violates Prof.Cond.R. 8.4(d) and (h) as charged.

**Sanction**

{¶ 11} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21. Because each disciplinary case is unique, we are not limited to the factors specified in the rule but may take into account "all relevant factors" in determining what sanction to impose. BCGD Proc.Reg. 10(B).

{¶ 12} The parties did not stipulate to any mitigating or aggravating factors. Nonetheless, in mitigation, the board noted that respondent does not have a prior disciplinary record and that his conduct was not driven by dishonest or selfish motives. BCGD Proc.Reg. 10(B)(2)(a) and (b). The board also considered respondent's full cooperation in the disciplinary proceeding as well as six character-reference letters, all of which endorsed his ability to provide quality legal representation and recommended that he be permitted to continue practicing law. BCGD Proc.Reg. 10(B)(2)(d) and (e).

{¶ 13} As for aggravating factors, we find that respondent terminated his participation in OLAP. Moreover, his testimony at the panel hearing demonstrates that he fails to appreciate the seriousness of his conduct and the

substantial risk of harm to which he subjected his clients. And although he claims to be remorseful, he resents that he has been publicly humiliated, has lost his job, and had disciplinary proceedings brought against him, while others, who he claims have had more significant addictions and more egregious criminal records, have been permitted to deal with their misconduct in private.

{¶ 14} The parties jointly recommended that the board impose a one-year suspension of respondent's license, stayed subject to numerous detailed conditions. Finding that the proposed sanction was cumbersome and ambiguous, the panel and the board rejected it and now recommend that we impose a two-year suspension from the practice of law, all stayed upon the following conditions:

{¶ 15} "1. Respondent remain drug-free and alcohol-free and commit no further criminal violations;

{¶ 16} "2. Respondent enter into a two-year drug-related contract with OLAP and submit to random drug screens, at his own expense, on a periodic basis as determined by OLAP. Respondent shall not be required to participate in OLAP's 12-step meetings. Instead Respondent shall meet with an OLAP counselor on a periodic basis as determined by OLAP so that it may monitor his drug screens and his compliance with condition #3 below;

{¶ 17} "3. Respondent obtain mental health/substance abuse counseling, at his own expense, with a qualified psychologist/psychiatrist on a regular basis as determined by that treating professional. Respondent shall provide any such professional a copy of Dr. Rosenbaum's report in this matter along with a copy of the Supreme Court's opinion in this matter. Respondent shall notify OLAP of the name and address of the mental health/substance abuse counselor. Upon request by OLAP, respondent's mental health/substance abuse counselor shall send periodic reports to OLAP confirming Respondent's ongoing treatment.

{¶ 18} "4. Respondent submit to OLAP and to his mental health/substance abuse counselor the name and dosage of all prescription medications as well as

the name and address of the prescribing physician. Respondent shall waive the doctor/patient privilege with respect to any such prescribing physician for the duration of this two year stayed suspension.

{¶ 19} "5. Respondent shall timely communicate any changes in his prescription medications to OLAP and his mental health/substance abuse counselor.

{¶ 20} "6. Respondent submit, within one year of the release of the Supreme Court's opinion in this mater, a qualified health-care professional's certification that he has successfully completed a substance abuse treatment program and is, in that professional's opinion to a reasonable degree of medical certainty, able to practice law in a competent, ethical, and professional manner. Upon submission of such a report condition [#]3 shall be deemed satisfied.

{¶ 21} "7. Respondent shall commit no further misconduct.

{¶ 22} "8. A monitoring attorney shall be appointed by Relator [pursuant to Gov.Bar R. V(9)] to monitor Respondent's compliance with conditions 1-7 and if Respondent fails to comply with the terms of conditions 1-7, he shall serve the entire two-year suspension from the practice of law."

{¶ 23} In support of their recommendation, the panel and board cite our decision in *Disciplinary Counsel v. May*, 106 Ohio St.3d 385, 2005-Ohio-5320, 835 N.E.2d 372, imposing a two-year suspension, stayed upon conditions, for an attorney who had used forged prescriptions to obtain Vicodin. Id. at ¶ 3-4. Like respondent, May had successfully completed a treatment-in-lieu-of-conviction program that resulted in the dismissal of the criminal charges against him. Id.

{¶ 24} While our decision in *May* is instructive, it is factually distinguishable from the present case because in *May*, the respondent's chemical dependency qualified as a mitigating factor pursuant to BCGD Proc.Reg. 10(B)(2)(g)(i) through (iv). Id. at ¶ 8. Here, while the record contains substantial evidence regarding respondent's use of illegal substances, Dr. Rosenbaum's

carefully worded report does not specifically diagnose a chemical dependency or state to a reasonable degree of medical certainty that respondent is able to engage in the competent, ethical, and professional practice of law. In the absence of this mitigating factor and in light of respondent's failure to acknowledge the seriousness of his misconduct and his obvious resentment over the consequences of his misconduct, we conclude that an actual suspension from the practice of law is necessary to protect the public from further misconduct.

{¶ 25} Accordingly, we suspend respondent from the practice of law in Ohio for two years, with 18 months stayed on the conditions recommended by the board, including probation. If respondent fails to comply with the conditions of the stay or probation, the stay will be lifted, and respondent will serve the full two-year suspension from practice. Costs are taxed to respondent.

Judgment accordingly.

PFEIFER, Acting C.J., and LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

The late CHIEF JUSTICE THOMAS J. MOYER did not participate in the decision in this case.

_____

Mitchell, Catalano & Boda Co. and William Mann; and Eugene Whetzel, Bar Counsel, for relator.

Steven D. Bell Co., L.P.A., and Steven D. Bell, for respondent.

_____