OHIO STATE BAR ASSOCIATION *v.* RESNICK.

[Cite as *Ohio State Bar Assn. v. Resnick*, 128 Ohio St.3d 56, 2010-Ohio-6147.]

*Attorney misconduct — Convictions of possessing cocaine, resisting arrest, and disrupting public service — Indefinite suspension.*

(No. 2010-1188 — Submitted September 15, 2010 — Decided December 21, 2010.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 06-051.

_____

**Per Curiam**.

{¶ 1} Respondent, Ramie Ann Resnick, a.k.a. Ramie Reisman Resnick of Cleveland, Ohio, Attorney Registration No. 0023382, was admitted to the practice of law in Ohio in 1984.

{¶ 2} Respondent was convicted of possession of cocaine, a fifth-degree felony, in the Butler County Common Pleas Court on February 14, 2006, and placed on community-control sanctions. As a result of that conviction, this court imposed an interim suspension of her law license, *In re Resnick*, 112 Ohio St.3d 1432, 2007-Ohio-151, 860 N.E.2d 111, and relator, Ohio State Bar Association, charged her with violating the Code of Professional Responsibility.

{¶ 3} On October 19, 2006, respondent was arrested again and was subsequently indicted in the Cuyahoga County Common Pleas Court for multiple counts of violating R.C. 2909.04, disrupting public service, a felony of the fifth degree, and one count of R.C. 2921.33, resisting arrest, a misdemeanor of the second degree. On June 27, 2007, she entered guilty pleas to resisting arrest and one count of disrupting public service, and in August 2007, she was sentenced to community-control sanctions.

**{¶ 4}** On November 21, 2007, relator filed an amended complaint with the Board of Commissioners on Grievances and Discipline setting forth two counts that detail the events in Butler County and Cuyahoga County. A panel of the board began a formal hearing on the amended complaint in Cleveland on September 25, 2009. That hearing included the testimony of respondent's treating psychiatrist, Cathleen Cerny, M.D., but was continued by agreement of the parties in order to have respondent submit to an independent psychiatric examination by Arthur L. Rosenbaum, M.D. On January 27, 2010, the panel received a report from Dr. Rosenbaum regarding his evaluation of respondent. On April 8, 2010, the panel resumed its hearing and respondent testified.

**{¶ 5}** The panel and board found that respondent had violated DR 1-102(A)(3) (a lawyer shall not engage in illegal conduct involving moral turpitude), 1-102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 1-102(A)(6) (a lawyer shall not engage in conduct that adversely reflects on the lawyer's fitness to practice law) as charged in Count I, and DR 1-102(A)(6), as charged in Count II, and recommended that respondent be indefinitely suspended from the practice of law on conditions. We adopt the board's findings of fact and misconduct and the recommended sanction.

### Misconduct

*Count I — The Butler County Incident*

**{¶ 6}** On February 17, 2005, respondent traveled from Cleveland to Oxford, Ohio, for a court appearance. Respondent traveled in her car, driven by a male companion, Daryl Taylor. Respondent had previously represented Taylor in a criminal case, and it is undisputed that she knew that Taylor had previously been convicted of drug-related crimes.

**{¶ 7}** While en route to the court, respondent's vehicle ran out of gas. A police officer took respondent to court while Taylor remained with the vehicle.

Taylor abandoned the car, and another officer had the car towed. Before the car was towed, however, the officer conducted an inventory search. During the search, police discovered a change purse in the glove compartment that contained a page of advertisements typically found in legal publications. A small amount of cocaine was found inside the folded page of advertisements, as was a straw containing white residue. Police also found a small amount of cocaine in a makeup bag behind the driver's seat.

{¶ 8} These facts formed the basis of the charge of cocaine possession in the Butler County Common Pleas Court. Respondent was convicted of that offense.

{¶ 9} Despite that conviction and her admitted occasional use of cocaine, respondent maintains that the cocaine found in her vehicle was not hers. And at times during the hearing, she suggested that she is not guilty of the crime of possessing cocaine. In her view, her error was simply that she had used poor judgment in having Taylor drive her.

{¶ 10} In defense of her actions, respondent asserts that she was forced to have Taylor drive her to Oxford because she was under the influence of asthma medications and had been ordered by her physician not to drive, that she was unable to have the court hearing continued, and that Taylor was the only person she could find to drive her. She concedes that having him drive her was "extremely ill advised" and that she had used "very poor judgment." And although she steadfastly denies that the cocaine belonged to her, she does admit that the makeup bag was hers.

{¶ 11} As noted above, the board found that respondent's misconduct related to the events in Butler County constituted violations of DR 1-102(A)(3), (4), and (6).

*Count II — The Cuyahoga County Incident*

{¶ 12} On October 19, 2006, respondent called 9-1-1 to report that her car had been stolen. Respondent avers that she became agitated because she did not think the police were responding appropriately to her report of the crime. She testified that she did not have a good relationship with the police department at the time and that she had called the police at least three times that day pertaining to her stolen car. Although the panel was not presented with any significant evidence of the other circumstances surrounding this event, it is undisputed that respondent was indicted subsequently for nine counts of disrupting public service in violation of R.C. 2909.04, a felony of the fifth degree, and resisting arrest in violation of R.C. 2921.33, a misdemeanor of the second degree.

{¶ 13} During respondent's appearance in court on the disrupting-public-service and resisting-arrest charges, the judge was so concerned about respondent's demeanor and erratic behavior that he ordered that she undergo a mental-competency evaluation. She was held for approximately 60 days at Northcoast Behavioral Healthcare Center ("the treatment facility") in Cleveland.

{¶ 14} After respondent was found competent, she pleaded guilty in the Cuyahoga County Common Pleas Court to one count of disrupting public service and one count of resisting arrest.

{¶ 15} Although there was much evidence submitted at the hearings regarding respondent's mental health, we are still unsure whether she requires treatment. Respondent was diagnosed with bipolar disorder during her hospitalization at the treatment facility. But Dr. Cerny testified that she believes that respondent does not have bipolar disorder and that respondent's behavior was caused by the use of illegal and/or prescription drugs.

{¶ 16} Notably, there is no evidence (1) that respondent has experienced similar symptoms since her time at the treatment facility, (2) that she continues to use cocaine or other illegal drugs, or (3) that she misuses prescription drugs. And Dr. Cerny testified that she does not expect respondent to have another manic

episode unless she abuses drugs. Dr. Cerny explained that she had not referred respondent for substance-abuse treatment because respondent denied using drugs after her discharge from the treatment facility and because Dr. Cerny saw no evidence of drug abuse by respondent. And according to respondent, she has been evaluated for substance abuse in the past and been told that she did not have a substance-abuse problem.

{¶ 17} The panel and board found that respondent's misconduct in Cuyahoga County constituted a violation of DR 1-102(A)(6).

### Sanction

{¶ 18} "When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ('BCGD Proc.Reg.'). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21. Because each disciplinary case is unique, we are not limited to the factors specified in the rule but may take into account 'all relevant factors' in determining what sanction to impose. BCGD Proc.Reg. 10(B)." *Ohio State Bar Assn. v. Peskin*, 125 Ohio St.3d 244, 2010-Ohio-1811, 927 N.E.2d 598, ¶ 11.

{¶ 19} The panel and board found as aggravating factors that respondent acted with a dishonest or selfish motive and that she had been convicted of multiple offenses. See BCGD Proc.Reg. 10(B)(1)(b) and (d). In mitigation, the panel and board found that respondent did not have a prior disciplinary record, that she exhibited a cooperative attitude toward the proceedings, and that she had

been under an interim suspension since January 18, 2007, as a result of the felony conviction in Butler County. See BCGD Proc.Reg. 10(B)(2)(a), (d), and (f).

{¶ 20} Although relator sought respondent's disbarment, the panel and board recommended that respondent be indefinitely suspended from the practice of law in Ohio and that her suspension be made retroactive to the date of her interim felony suspension, January 18, 2007. The panel and board recommended further that should respondent "reapply to resume her law practice, [(1) she must] provide proof that she participated in a program of 'intensive and long term therapy' (as recommended by Dr. Rosenbaum in his evaluation) resulting in a report that [she] is mentally fit to resume the practice of law," (2) she must show proof that she entered into a contract with the Ohio Lawyers Assistance Program ("OLAP") "with respect to her chemical dependence and mental health and she must show compliance with that contract," and (3) she must submit to a law-practice monitor.

{¶ 21} The recommendation by the panel and board was supported by the report of Dr. Rosenbaum, who, like Dr. Cerny, found no evidence that respondent is currently suffering from a mental disability. However, Dr. Rosenbaum noted that respondent's failure to keep her attorney-registration record up to date suggests that she might have some issues that would affect her fitness to manage a law practice. Thus, although he found no evidence of current mental-health issues or substance abuse, he observed that "[o]nly in an intensive and long term therapy" could there be a determination of respondent's mental health.

{¶ 22} Although we are aware of the conflicting evidence of whether respondent has a substance-abuse problem or mental-health issues, the record establishes the need for ensuring that any such problems or issues are treated before she resumes the practice of law. We recognize that respondent has been cooperative with the disciplinary process, but we are concerned that there are indications that she may not be fully compliant with treatment plans. For

example, although she kept appointments with her treating physicians immediately after her discharge from the treatment facility, she later repeatedly missed scheduled appointments with Dr. Cerny. Similarly, even though there is no evidence before us of current substance abuse, respondent did admit that she has used cocaine in the past, she was convicted of possession of cocaine, and her use or misuse of prescription drugs may have at least played a part in her inability to properly function when she faced charges in the Cuyahoga County courtroom. Thus, there is an obvious need to ensure that respondent does not have untreated substance-abuse and mental-health issues if and when she is reinstated to the practice of law.[1] The primary purpose of disciplinary sanctions is not to punish the offender but to protect the public. *Disciplinary Counsel v. O'Neill*, 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, ¶ 33. We impose the conditions in this case with that purpose in mind.

{¶ 23} Relator sought disbarment of respondent. Here, however, the evidence suggests strongly that respondent's drug use led to the ethical breaches at issue. In such cases, we tailor the sanctions imposed to assist in and monitor the attorney's recovery. *Cincinnati Bar Assn. v. Lawson*, 119 Ohio St.3d 58, 2008-Ohio-3340, 891 N.E.2d 749, ¶ 73, citing *Cincinnati Bar Assn. v. Washington*, 109 Ohio St.3d 308, 2006-Ohio-2423, 847 N.E.2d 435, ¶ 9.

{¶ 24} We therefore accept and agree with the recommendation of the board, to which no objection was filed. The question of respondent's ability to manage her affairs and the affairs of her clients is particularly salient here, given respondent's admitted poor judgment and her expressed desire to return to her work as a sole practitioner in criminal law.

---

1. Although the panel did not mention it in its report, respondent admitted to one of her mental-health counselors that she had been convicted of driving while under the influence of alcohol in 1997 and again in 1999.

**{¶ 25}** Accordingly, respondent is hereby suspended indefinitely from the practice of law in Ohio, and the suspension is retroactive to the date of her felony conviction, January 18, 2007. Any petition for reinstatement must include (1) proof that respondent was evaluated by OLAP for chemical dependency and mental-health issues and that, if recommended by OLAP, she entered into a contract with OLAP and is in compliance with the contract and (2) a report from a qualified mental-health-care professional certifying that respondent is competent to resume the practice of law. Also, if respondent is reinstated, she must submit to a law-practice monitor pursuant to Gov.Bar R. V(9).

Judgment accordingly.

BROWN, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Eugene P. Whetzel and Carla J. Cannon, for relator.

Gary H. Levine, for respondent.

_____