**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Cleveland Metro. Bar Assn. v. McElroy,* **Slip Opinion No. 2014-Ohio-3774.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-3774

CLEVELAND METROPOLITAN BAR ASSOCIATION *v.* MCELROY.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cleveland Metro. Bar Assn. v. McElroy,* Slip Opinion No. 2014-Ohio-3774.]**

*Attorneys—Misconduct—Dishonest conduct and statements in criminal case and disciplinary proceeding—Failure to report disciplinary violation—Indefinite suspension.*

(No. 2013-1626—Submitted December 11, 2013—Decided September 4, 2014.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 12-058.

_____

**Per Curiam.**

{¶ 1} Respondent, Kenneth Kelly McElroy of Cleveland, Ohio, Attorney Registration No. 0070478, was admitted to the practice of law in Ohio in 1999. On October 13, 2011, we suspended McElroy's license to practice law on an interim basis following our learning of his September 20, 2005 conviction of

forgery and tampering with records. *In re McElroy*, 129 Ohio St.3d 1499, 2011-Ohio-5244, 954 N.E.2d 1211.

**{¶ 2}** On August 6, 2012, relator, Cleveland Metropolitan Bar Association, filed a 13-count complaint with the Board of Commissioners on Grievances and Discipline charging McElroy with violations of the Code of Professional Responsibility and the Rules of Professional Conduct arising from the conduct that led to his felony convictions.[1] The parties submitted stipulations of facts and violations and jointly recommended that McElroy be suspended from the practice of law for 18 months, with 6 months of the suspension stayed on the condition that he engage in no further misconduct.

**{¶ 3}** The parties jointly moved to waive the formal hearing, but a panel of the Board of Commissioners on Grievances and Discipline denied the motion. The panel conducted a hearing and adopted the parties' stipulations of fact and misconduct, but recommended a two-year suspension with no reinstatement "until Respondent can demonstrate that he has broken this pattern of lying" that was of specific concern to the panel. The board recommended an indefinite suspension. No objections have been filed.

**{¶ 4}** We adopt the board's findings of fact and misconduct, and we find that an indefinite suspension is appropriate, with no credit for time served under the interim felony suspension.

### Misconduct

**{¶ 5}** The record demonstrates that McElroy has a disposition for not telling the truth. Many of his ethics violations arose from a relationship with a woman who, in May 2004, attempted to run over him with her automobile. Because he did not want her to be prosecuted for felony assault, McElroy testified

---

[1] Relator charged McElroy with misconduct under the applicable Disciplinary Rules for acts occurring before February 1, 2007, the effective date of the Rules of Professional Conduct, which superseded the Disciplinary Rules of the Code of Professional Responsibility.

in an affidavit that "the whole situation was an unfortunate accident," even though he later admitted in court and under oath that hers was an intentional act.

{¶ 6} McElroy had purchased the automobile for this girlfriend, and then, after a disagreement with her, he took the vehicle. She wanted the car back, made attempts to get it back, and ultimately called the police, reported it stolen, and notified McElroy that she had filed a report with the police. McElroy later notarized her alleged signature on a motor vehicle title without administering the oath and without actually witnessing her sign it, transferring in that process the ownership of the vehicle from his girlfriend to an acquaintance.

{¶ 7} After a four-day bench trial and based on these facts, the trial court found McElroy guilty of forgery and tampering with evidence, a fifth-degree and third-degree felony respectively. The court found that there was a "large gap of credibility" with respect to McElroy's testimony. "In fact," the judge continued, "the Court notes from the observations here of all of the circumstances that were testified to the fairly evasive manner that this Defendant answered questions, especially on cross-examination, and that his credibility is lacking."

{¶ 8} During closing arguments at McElroy's trial, and also at the sentencing hearing, his counsel stated that McElroy "has no prior criminal convictions" and "no prior criminal record." In fact, McElroy had been convicted of assault in 1993, and at the time of his trial, another charge of assault was pending in South Euclid Municipal Court, on which he was found guilty on October 18, 2005. In the first instance, McElroy did not correct his counsel's representations to the judge, and in the second instance, McElroy did not report the ultimate outcome to the judge or his probation officer, notwithstanding the court's order for just such an update. McElroy also did not report his felony convictions for forgery and tampering with evidence to any disciplinary authority.

{¶ 9} On September 1, 2005, perhaps attempting to avoid the inevitable, McElroy took inactive status with respect to his license to practice law.

Following our imposition of an interim suspension of his license, he represented to this court, in his "Motion to Dissolve and/or Modify Suspension (Expedited Review Requested)" that he had "formally *resigned* his license to practice law some time before the entry of his felony conviction on September 20, 2005." (Emphasis added.) He claimed in that same filing that he "willingly left the legal profession before his conviction, for at least *four years*." (Emphasis sic.) He became active again on February 18, 2009, three years and five months after he went inactive.

{¶ 10} On June 10, 2010, McElroy filed in the Cuyahoga County Court of Common Pleas a "Motion for Sealing of Record of First Offense," attempting by this motion to expunge the criminal convictions he received in 2005.[2] Yet that conviction was not his first offense; instead, it was the second of three criminal convictions.

{¶ 11} McElroy told much of his version of these events in a November 19, 2011 response to a written inquiry from relator regarding his felony convictions. Relator's investigator on March 15, 2012, interviewed McElroy, and while explaining his conduct, McElroy stated that the trial had lasted only one day, that he "never in any way shape or form ha[d] attempted to practice law for approximately four years." When asked by the investigator whether any court actions occurred other than his trial and the prosecution of his girlfriend for assaulting him with a car, McElroy said no. But McElroy had been charged in 2004 with domestic violence and child endangering in Cleveland Municipal Court. These charges had been dismissed in June 2005, when his girlfriend failed to appear to testify.

---

[2] McElroy cites in his motion R.C. 2953.31 through 2953.36 as authority for the court to seal. R.C. 2953.31(A) defines "first offender" as "anyone who has been convicted of an offense in this state or any other jurisdiction and who previously or subsequently has not been convicted of the same or a different offense in this state or any other jurisdiction."

{¶ 12} McElroy, during the disciplinary investigation, also made the following statements: (1) that his last conversation with his ex-girlfriend had been in July 2004, (2) that the judge in his trial during the sentencing hearing had asked the case's detective for his opinion regarding sentencing and the detective had said "no jail time," (3) that during that sentencing hearing, the judge stated that he was imposing alcohol and drug testing as part of McElroy's probation because McElroy "probably or likely" had a substance- or alcohol-abuse problem because he let himself get into the negative situation with his ex-girlfriend. All of these statements were contradicted by his trial testimony and the trial transcript.

{¶ 13} To summarize, McElroy was convicted of forgery and tampering with evidence, made false statements in an affidavit, made false statements to a disciplinary investigator, made false statements to the trial court in his filings, allowed false statements to be made to the trial court without correction, made false statements to this court in his filing, notarized a signature without observing the person sign or administering the oath, and failed to report his felony convictions to a disciplinary body.

{¶ 14} The parties stipulated, and the panel and board found, that McElroy's conduct violated DR 1-102(A)(3) (prohibiting a lawyer from engaging in illegal conduct involving moral turpitude), (4) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), (5) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice), and (6) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law) and 1-103(A) (requiring a lawyer possessing unprivileged knowledge of a violation of DR 1-102 to report the knowledge to a tribunal or other legal authority empowered to investigate or act upon the violation) and Prof.Cond.R. 8.1(a) (prohibiting knowingly making a false statement of material fact in connection with a disciplinary matter), 8.3(a) (requiring an attorney to self-report his violations of

the Rules of Professional Conduct that raise a question about his honesty, trustworthiness, or fitness as a lawyer), 3.3(a)(1) (prohibiting a lawyer from knowingly making a false statement of fact or law to a tribunal), and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), (d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice), and (h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law).

### Sanction

{¶ 15} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. We also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 16} As mitigating factors, the parties stipulated that McElroy does not have any prior disciplinary record, has paid the criminal penalty for his convictions, and has acknowledged his wrongful conduct. They further stipulate that McElroy placed himself on a "self-imposed break" from the practice of law from 2005 to 2009, has not engaged in a lengthy pattern of ongoing misconduct or caused grave harm to others as a result of his misconduct, and has not realized any actual personal gain or profit from his misconduct. Finally, they stipulate that McElroy paid for the vehicle formerly belonging to his girlfriend and returned it to her and that he maintains that he relied upon his counsel's erroneous advice in not reporting his conviction to the Supreme Court. No aggravating factors were submitted by the parties.

{¶ 17} The parties recommend a sanction of an 18-month suspension with 6 months stayed on the condition that McElroy engage in no further misconduct and request that he be credited with his time under the interim felony suspension.

{¶ 18} The panel disagreed with many of the mitigating factors, however, and added aggravating factors. The panel found it difficult to believe that McElroy was not aware of his obligation to report his disciplinary infractions. It noted that "[h]is numerous falsifications and misrepresentations of fact create a pattern of dishonesty, much more serious than Relator suggests." The panel found that McElroy was motivated by a dishonest and selfish motive in his handling of the motor vehicle transfer and in his misleading of the court in his attempt at expungement. The panel also found that McElroy attempted to realize personal gain in the transfer of the vehicle to his friend. The panel thus recommended a two-year suspension.

{¶ 19} Most disconcerting to both the panel and board was McElroy's pattern of lying:

> Viewed individually, no single misrepresentation of his would warrant an indefinite suspension. Even in the aggregate, it is possible to view his misrepresentations as not especially harmful to others. But the practice of law demands from every attorney, at a minimum, absolute candor before any court or disciplinary authority. Respondent repeatedly has demonstrated a disturbing tendency to misrepresent and conceal the truth about his past behavior. If an attorney cannot be trusted to reveal candidly unfavorable facts about his own behavior, we as a panel cannot be sanguine about whether he will be candid in his representations to courts or clients in other contexts. Until Respondent can demonstrate that he has broken this pattern of lying, his license to

practice law although subject to a definite suspension should not be reinstated.

The board adopted the findings of fact and conclusions of law of the hearing panel but did not adopt the panel's recommendation. Instead, based on the panel's concerns, the board recommends that McElroy be suspended indefinitely, with no credit for time served under his felony suspension imposed in October 2011.

{¶ 20} In *Disciplinary Counsel v. Insley*, 104 Ohio St.3d 424, 2004-Ohio-6564, 819 N.E.2d 1109, we found that the respondent violated DR 1-102(A)(4), (5), and (6), 6-101(A)(3), and 7-101(A)(1) and (2) for conduct involving temporary-custody papers. The respondent sent school officials copies of an executed petition for temporary custody and a consent judgment entry that she represented would be filed in court that same day. Not following through, and the parent being apprised by the school's officials several months later that they had not received a court order, the respondent fabricated a court document that included forged signatures of both a magistrate and judge in an attempt to cover up her failure to file. She then faxed the falsified document to the school along with a cover letter that falsely advised school officials that all the necessary papers had been filed in court and the child's custody had been changed.

{¶ 21} In mitigation, we found that the respondent had no prior disciplinary record. As an aggravating factor, we found that although the respondent cooperated initially in the disciplinary investigation, she did not answer the relator's complaint and did not further participate in the disciplinary process. The respondent's lies to the court and her client and her fabrication of the judicial officers' signatures warranted an indefinite suspension. *Id.,* ¶ 12.

{¶ 22} In *Disciplinary Counsel v. Woods*, 28 Ohio St.3d 245, 503 N.E.2d 746 (1986), the respondent gained the confidence of an elderly woman by helping her with matters that did not involve attorney-client matters. He handled certain

financial matters for her, occasionally signing her name even though he did not have a power of attorney for those purposes. When the woman's $70,000 money-market certificate of deposit matured, the respondent, without authority, redeemed it, forged her signature on the cashier's check, and deposited that endorsed check into his personal account. The respondent was convicted of theft, forgery, and uttering in violation of R.C. 2913.02 and 2913.31 and sentenced to a one-year term of imprisonment. We found that his misconduct violated DR 1-102(A)(1), (3), (4), and (6), and we imposed an indefinite suspension from the practice of law. *Id*. at 247.

{¶ 23} And in *Cincinnati Bar Assn. v. Nienaber*, 80 Ohio St.3d 534, 687 N.E.2d 678 (1997), the respondent attempted to finesse to his client's advantage by his silence the timing of hearings, charges, and convictions on two DUI-related prosecutions, which led two different judges to unwarranted inferences in their respective circumstances. The respondent also made affirmatively false statements to one of the judges. "We require complete candor with courts. * * * We are particularly concerned that the instant matter arose on the criminal docket of one of our municipal courts which handles an extremely heavy caseload. Judges, especially those who must process heavy caseloads, must be able to rely on the representations of the attorneys who appear before them." *Id.* at 537. In light of the respondent's violation of DR 1-102(A)(4) and (5) and 7-102(A)(5) and (7), and considering that we had previously suspended that lawyer for 6 months, we indefinitely suspended him from the practice of law.

{¶ 24} Because we find that Kenneth Kelly McElroy's conduct was similar to the conduct in the above cases, we indefinitely suspend him from the practice of law in Ohio, with no credit for time served under the interim felony suspension. Costs are taxed to McElroy.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Cleveland Metropolitan Bar Association and Heather M. Zirke; Thompson Hine, L.L.P., Jennifer S. Roach, and Holly H. Little, for relator.

Kenneth Kelly McElroy, pro se.

_____