[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Lorain Cty. Bar Assn. v. Lindon*, Slip Opinion No. 2021-Ohio-804.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-804

LORAIN COUNTY BAR ASSOCIATION *v.* LINDON.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Lorain Cty. Bar Assn. v. Lindon*, Slip Opinion No. 2021-Ohio-804.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct and the Rules for the Government of the Bar—No credit for time served under interim felony suspension—Indefinite suspension.*

(No. 2019-0216—Submitted January 27, 2021—Decided March 18, 2021.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2016-038.

_____

**Per Curiam.**

{¶ 1} Respondent, James L. Lindon, of Avon, Ohio, Attorney Registration No. 0068842, was admitted to the practice of law in Ohio in 1997. On January 15, 2010, we publicly reprimanded Lindon after he received a similar sanction from the Michigan Attorney Discipline Board. *Disciplinary Counsel v. Lindon*,

124 Ohio St.3d 1217, 2010-Ohio-507, 921 N.E.2d 651. On June 30, 2016, we suspended his license on an interim basis following his convictions on felony counts of theft, drug possession, and tampering with evidence, and that suspension remains in effect. *See In re Lindon*, 150 Ohio St.3d 1236, 2016-Ohio-4671, 79 N.E.3d 554.

{¶ 2} In a September 2, 2016 complaint and again in an August 29, 2018 first amended complaint, relator, Lorain County Bar Association, alleged that the conduct underlying Lindon's criminal convictions violated the professional-conduct rules. The parties submitted stipulations of fact and misconduct and stipulated exhibits. After a hearing, the board issued a report finding that Lindon had engaged in the stipulated misconduct and recommending that we suspend him for two years, with one year stayed on conditions, and that we grant him no credit for the time served under the interim felony suspension. Lindon objected to the board's recommendation that he receive no credit for the time served under his interim felony suspension and that he be required to participate in the Ohio Lawyers Assistance Program ("OLAP"). We heard oral argument on those objections in September 2019.

{¶ 3} While the matter remained pending before this court, relator discovered evidence that Lindon had been suspended on an interim basis and ultimately disbarred in Michigan as a result of his felony convictions in Ohio.[1] On January 16, 2020, relator filed an emergency motion asking this court to stay the case and remand it to the board for further proceedings. The next day, disciplinary counsel commenced a reciprocal-discipline case by filing a certified

---

1. Lindon's Ohio disciplinary proceedings were stayed for nearly two years while he appealed his criminal conviction. *See* Gov.Bar R. V(18)(C) (providing that any disciplinary proceeding based on a conviction of an offense shall not be brought to hearing until all direct appeals from the conviction are concluded). Michigan, however, has no rule comparable to Gov.Bar R. V(18)(C). Therefore, Lindon's Michigan disciplinary proceedings based on his Ohio convictions went forward, despite his appeal. Disbarment in Michigan is not permanent; it is akin to an indefinite suspension in Ohio. Michigan's disciplinary-procedure rules permit a disbarred attorney to petition for reinstatement after five years. *See* Mich.Ct.R. 9.123(B).

copy of the Michigan order of disbarment with the clerk of this court. *See Disciplinary Counsel v. Lindon*, No. 2020-0093; Gov.Bar R. V(20). On March 25, 2020, we granted relator's motion, stayed both cases, and remanded the matter to the board for further proceedings.

{¶ 4} In a second amended complaint filed on April 7, 2020, relator alleged that Lindon committed three additional ethical violations by giving false testimony about the status of his Michigan law license during the course of these disciplinary proceedings and failing to report his Michigan discipline to the Office of Disciplinary Counsel and the clerk of this court. Lindon stood by his stipulations with respect to the original charges against him, but he denied having engaged in the additional misconduct.

{¶ 5} The case is now before us on the February 11, 2019 and October 2, 2020 reports of the Board of Professional Conduct finding that Lindon committed all of the charged misconduct and recommending that he be indefinitely suspended from the practice of law with no credit for the time served under his interim felony suspension. Neither party has objected to the board's October 2020 report.

{¶ 6} Having independently reviewed the record, we adopt the board's findings of misconduct and indefinitely suspend Lindon from the practice of law in Ohio with no credit for the time served under his interim felony suspension.

### Facts and Misconduct

*Lindon's Criminal Conduct*

{¶ 7} While working as a pharmacist at the Cleveland Clinic, Lindon was the subject of an internal investigation into the possible theft of drugs from the pharmacy. On June 2, 2015, security personnel reviewed video footage of Lindon removing a bottle of hydrocodone tablets from a basket, dumping something into his hand, and then placing that hand in his pocket. Upon being approached by security personnel, Lindon removed something from his pocket and placed it in

his mouth. After being asked to empty his pockets, Lindon removed three pills—two were later identified as tramadol and one was later identified as hydrocodone.

{¶ 8} Lindon was indicted on felony counts of theft, drug possession, and tampering with evidence. He represented himself at trial, and a jury found him guilty on all counts. The trial court sentenced him to serve two years of community control and ordered him to complete regular drug testing, counseling, and inpatient drug treatment and to pay a fine of $750. As a result of Lindon's convictions, his Ohio pharmacist license was permanently revoked.

{¶ 9} In September 2016, Lindon appealed his convictions to the Eighth District Court of Appeals, challenging the trial court's denial of his motion to suppress the evidence obtained from his pocket. In June 2017, the court of appeals reversed the trial court's decision denying Lindon's motion to suppress and remanded the case to the trial court with instructions to conduct an evidentiary hearing before ruling on the motion to suppress. *State v. Lindon*, 8th Dist. Cuyahoga No. 104902, 2017-Ohio-4439, ¶ 18. The trial court conducted the hearing and again denied the motion on June 4, 2018. Lindon has since completed his sentence.

{¶ 10} In its February 2019 report, the board found that Lindon's criminal conduct violated Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness) and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). The board also found that his conduct is sufficiently egregious to warrant a separate finding that he violated Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law), *see Disciplinary Counsel v. Bricker*, 137 Ohio St.3d 35, 2013-Ohio-3998, 997 N.E.2d 500, ¶ 21.

*Lindon's Michigan Discipline*

{¶ 11} At the July 16, 2020 panel hearing following our remand, relator presented evidence that the Michigan Attorney Discipline Board had suspended Lindon's law license on an interim basis in June 2016 and disbarred him on February 21, 2017, based on his felony convictions in Ohio. At that hearing, Lindon testified that he had received notice that Michigan had suspended his license on an interim basis as a consequence of his felony convictions, but he stated that he had not received—or did not recall receiving—any correspondence from Michigan regarding the subsequent disbarment proceedings.

{¶ 12} However, Lindon also admitted that he had received an April 4, 2018 letter from the United States Patent and Trademark Office ("USPTO") notifying him that the office had launched an investigation because he had been disbarred in Michigan. In addition, the deputy director of the Michigan Attorney Discipline Board submitted an affidavit to the board in which she averred that she had spoken with Lindon about his disbarment on June 4, 2018. The board therefore determined that Lindon was aware of Michigan's interim suspension and disbarment orders and the pending USPTO proceeding *before* his deposition on August 31, 2018.

{¶ 13} When asked at that deposition whether he was licensed to practice in any other state, Lindon testified that he was licensed to practice law in Michigan and that that license was "just no longer active." He acknowledged that he had been publicly reprimanded in Michigan in 2009, but when relator asked him whether there had been "any other disciplinary proceedings in [his] capacity as a lawyer," he stated that there were "only two incidents that I know of. I mean the present one and the one from * * * 2009 or whatever it was."

{¶ 14} At his July 2020 disciplinary hearing, Lindon argued that his deposition testimony was not false for two reasons. First, he asserted that he had not lied about the status of his Michigan license because, after being publicly

reprimanded in 2009, he had asked "what was the fastest and easiest way that [he could] be done with the State of Michigan." He stated that he was told that he could stop paying his dues and go on inactive status, which he did. But even if it was true that his Michigan license was inactive for his failure to pay dues, Lindon also knew that he had been disbarred in Michigan and failed to disclose that fact during his deposition.

{¶ 15} Second, Lindon claimed that he had relied on a September 2017 e-mail that was purportedly sent to him and the Michigan Attorney Discipline Board by the assistant deputy administrator of Michigan's Attorney Grievance Commission (the prosecuting arm of Michigan's disciplinary process). That e-mail stated:

> As you are aware, the rules require that a discipline be vacated when the conviction from which it resulted is set aside. Mr. Lindon's conviction was set aside and the matter remanded for retrial.
>
> We will be reopening our file in order to monitor the criminal proceedings.

{¶ 16} Although that e-mail suggests that perhaps Lindon's Michigan disbarment should have been vacated, it is important to note that the e-mail was *not* issued by the Michigan Attorney Discipline Board (i.e., the entity charged with imposing discipline in that state). And because Lindon had spoken on the telephone with the deputy director of the Michigan board about his disbarment on June 4, 2018—as sworn to by the deputy director in her affidavit—our Board of Professional Conduct found that he could not in good faith rely upon the earlier e-mail from the prosecuting arm of the Michigan disciplinary process to claim that

he did not understand the status of his Michigan license at the time of his August 2018 deposition.

{¶ 17} The board therefore rejected Lindon's attempts to justify his failure to disclose his Michigan disbarment and found that his conduct violated Prof.Cond.R. 8.4(c) and 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice) and Gov.Bar R. V(20)(A) (requiring an attorney admitted to the practice of law in Ohio to provide written notification of a disciplinary order issued in another jurisdiction to disciplinary counsel and the clerk of this court within 30 days of its issuance).

{¶ 18} We adopt these findings of misconduct. Moreover, we emphasize that whether Lindon affirmatively misrepresented or knowingly omitted material facts regarding his Michigan disbarment, the result is the same—Lindon engaged in conduct that involved dishonesty, fraud, deceit, or misrepresentation not only during relator's investigation but also in his conduct before the board, which serves as an arm of this court. *See, e.g.*, *Miles v. McSwegin*, 58 Ohio St.2d 97, 99, 388 N.E.2d 1367 (1979) ("It is well established that an action for fraud and deceit is maintainable not only as a result of affirmative misrepresentations, but also for negative ones, such as the failure of a party to a transaction to fully disclose facts of a material nature where there exists a duty to speak").

### Sanction Recommended by the Board

{¶ 19} When recommending the sanction to be imposed for attorney misconduct, the board considers all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 20} In its original report, the board found that three aggravating factors were present in this case—Lindon's prior disciplinary record, his dishonest or selfish motive, and his refusal to acknowledge the wrongful nature of his conduct. *See* Gov.Bar R. V(13)(B)(1), (2), and (7). On remand it also found that Lindon

failed to cooperate in the disciplinary process and submitted false statements or engaged in other deceptive practices during the disciplinary proceedings. *See* Gov.Bar R. V(13)(B)(5) and (6).

{¶ 21} As mitigating factors, the board originally found that Lindon made full and free disclosure to the board and exhibited a cooperative attitude toward the disciplinary proceedings, submitted evidence of his good character and reputation, was subject to other penalties or sanctions (including criminal sanctions and the revocation of his pharmacist license), engaged in other interim rehabilitation efforts, and harmed no clients. *See* Gov.Bar R. V(13)(C)(4), (5), (6), and (8). But on remand, the board withdrew its findings regarding Lindon's cooperation and full and free disclosure because his additional misconduct proved that they were not true.

{¶ 22} During his December 2018 disciplinary hearing, Lindon admitted that from 2005 until shortly before his criminal trial, he used opioids prescribed by his physician to treat a medical condition, but he denied that he had ever stolen them. He testified that he was diagnosed with opiate-use disorder after his criminal trial and that he had completed a 30-day inpatient treatment program. However, he did not attempt to establish his substance-use disorder as a mitigating factor under Gov.Bar R. V(13)(C)(7).

{¶ 23} Lindon voluntarily entered into a contract with OLAP after his criminal trial and before sentencing. However, he testified that he was terminated from OLAP because he is an atheist, that the program did not offer any secular alternative to Alcoholics Anonymous ("AA"), and that AA encourages its participants to believe in a higher power. Despite his objection to the religious aspects of AA, he had been attending weekly meetings until around the time of his 2018 disciplinary hearing—though he admitted that his attendance ceased sometime before the September 2019 oral argument in this case.

{¶ 24} In its February 2019 report, the board noted that we have imposed sanctions ranging from two-year partially stayed suspensions to indefinite suspensions on attorneys who have been convicted of drug-related offenses comparable to Lindon's. *See, e.g., Ohio State Bar Assn. v. Peskin*, 125 Ohio St.3d 244, 2010-Ohio-1811, 927 N.E.2d 598 (imposing a two-year suspension with 18 months conditionally stayed on an attorney who completed an intervention-in-lieu-of-conviction program that resulted in the dismissal of charges for possession of crack cocaine and resisting arrest). At that time, the board recommended that Lindon be suspended for two years, with one year stayed on several conditions, including that he enter into a two-year drug-related contract with OLAP. The board also recommended that Lindon receive no credit for the time served under his interim felony suspension.

{¶ 25} Lindon objected to the board's recommended sanction, arguing that the recommendations that he receive no credit for the time served under his interim felony suspension and that he be required to participate in OLAP were unjust, excessive, and inconsistent with our precedent. He argued that the failure to credit him for the time served under his interim felony suspension (much of which had then been occasioned by his criminal appeal) would result in an unconstitutional trial tax. He also claimed that his compelled participation in OLAP would violate the Establishment Clause of the First Amendment to the United States Constitution under the mistaken belief that OLAP does not offer any secular alternatives to 12-step programs that promote belief in a higher power.

{¶ 26} Given the additional misconduct found on remand, the board now recommends that Lindon be indefinitely suspended from the practice of law and that he receive no credit for the time served under his interim felony suspension. In addition to the requirements set forth in Gov.Bar R. V(25)(D), the board also recommends that Lindon's reinstatement be subject to the conditions set forth in

its first recommended sanction—with the exception that he shall *not* be required to participate in 12-step meetings and the additional requirement that he submit a prognosis from a qualified chemical dependency professional that he is able to return to the competent, ethical, and professional practice of law.

{¶ 27} Lindon has not objected to the board's second report or renewed his objections to the board's original report. We note, however, that the board's current recommendation and our decision today expressly state that Lindon shall *not* be required to participate in the 12-step programs that rendered his OLAP contract objectionable to him. Furthermore, we find no merit in Lindon's arguments in favor of credit for time served under his interim felony suspension given the additional delay that was occasioned by his own dishonesty regarding his Michigan disbarment.

{¶ 28} Lindon's wrongdoing began with misconduct in his role as a pharmacist that resulted in felony convictions for theft, drug possession, and tampering with evidence but also violated the most basic professional duty of an attorney—to act with honesty and integrity. *See, e.g.*, *Cincinnati Bar Assn. v. Newman*, 127 Ohio St.3d 123, 2010-Ohio-5034, 937 N.E.2d 81, ¶ 12; *Cincinnati Bar Assn. v. Blankemeyer*, 109 Ohio St.3d 156, 2006-Ohio-2038, 846 N.E.2d 523, ¶ 12. He continued to violate that duty of honesty and integrity by giving false and misleading testimony in his deposition and in the disciplinary hearing conducted by an arm of this court. We have recognized that a lawyer's material misrepresentation to a court " 'strikes at the very core of a lawyer's relationship with the court' " and that " '[r]espect for our profession is diminished with every deceitful act of a lawyer.' " *Disciplinary Counsel v. Stafford*, 131 Ohio St.3d 385, 2012-Ohio-909, 965 N.E.2d 971, ¶ 68, quoting *Disciplinary Counsel v. Fowerbaugh*, 74 Ohio St.3d 187, 190, 658 N.E.2d 237 (1995).

{¶ 29} In *Cleveland Metro. Bar Assn. v. McElroy*, 140 Ohio St.3d 391, 2014-Ohio-3774, 18 N.E.3d 1191, we disciplined an attorney who had engaged in

a pattern of dishonesty that included being convicted of forgery and tampering with evidence; allowing his counsel to make false statements about his criminal record in court without correction; making false statements in an affidavit, in his expungement filing, and in the resulting disciplinary proceedings; and failing to report his felony convictions to a disciplinary authority. *Id.* at ¶ 10, 13. Like Lindon, McElroy violated Prof.Cond.R. 8.4(c), (d), and (h). *Id.* at ¶ 14. Instead of failing to report discipline imposed in another jurisdiction as Lindon did, McElroy also violated Prof.Cond.R. 8.3(a) (requiring a lawyer to self-report ethical violations that raise a question about the lawyer's honesty, trustworthiness, or fitness as a lawyer). *Id.* In contrast to Lindon, McElroy had no prior disciplinary record and acknowledged the wrongfulness of his conduct. *Id.* at ¶ 16. Nonetheless, we accepted the panel's assessment that "[i]f an attorney cannot be trusted to reveal candidly unfavorable facts about his own behavior, we as a panel cannot be sanguine about whether he will be candid in his representations to courts or clients in other contexts." *Id.* at ¶ 19. We indefinitely suspended McElroy from the practice of law in Ohio with no credit for the time served under his interim felony suspension. *Id.* at ¶ 24. We agree with the board that that is the appropriate sanction for Lindon's misconduct in this case.

**Conclusion**

{¶ 30} Accordingly, James L. Lindon is indefinitely suspended from the practice of law in Ohio with no credit for the time served under the interim felony suspension imposed on June 30, 2016. In addition to the requirements set forth in Gov.Bar R. V(25)(D), Lindon's reinstatement to the practice of law in Ohio shall be subject to the conditions that he (1) remain drug- and alcohol-free, (2) enter into a two-year drug-related contract with OLAP—though he shall not be required to participate in 12-step meetings, (3) submit to random drug screens, (4) participate in mental-health/substance-abuse counseling with a qualified chemical-dependency professional, notify OLAP of that professional's name and

address, and execute the necessary waivers to allow the professional to send periodic reports to OLAP, (5) notify his OLAP counselor and his mental-health/substance-abuse counselor of the names and dosages of all drugs prescribed to him and waive the doctor-patient privilege with respect to any prescribing physician for the duration of his suspension, (6) submit proof that he has successfully completed a substance-abuse-treatment program, (7) submit a prognosis from a qualified chemical-dependency professional that he is able to return to the competent, ethical, and professional practice of law, (8) commit no further misconduct, and (9) pay the costs of these disciplinary proceedings. Costs are taxed to Lindon.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

_____

Wickens, Herzer, Panza and Daniel A. Cook; and O'Toole, McLaughlin, Dooley & Pecora Co., L.P.A., Matthew A. Dooley, and Michael R. Briach, for relator.

James L. Lindon, pro se.

_____