[Cite as *State v. Williams*, 2024-Ohio-469.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO, :

    Plaintiff-Appellee, :

                                       No. 112425

    v. :

OCTAVIUS WILLIAMS, :

    Defendant-Appellant. :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED, VACATED, AND REMANDED
**RELEASED AND JOURNALIZED:** February 8, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-11-547334-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Anthony T. Miranda, Assistant Prosecuting Attorney, *for appellee*.

Elizabeth Miller, Ohio Public Defender, and Joanna Sanchez, Managing Counsel Wrongful Conviction Project, and Rachel Troutman, Supervising Attorney Death Penalty Department, *for appellant*.

LISA B. FORBES, J.:

{¶ 1} Octavius Williams ("Octavius") appeals from the trial court's journal entry denying his: 1) motion for a new trial ("2011 Motion for New Trial"); and 2) motion for an order granting the motion for a new trial under Crim.R. 33 ("2020

Motion for New Trial") (collectively, "Motions for New Trial") and motion for dismissal of indictment under Crim.R. 48(B) ("Motion to Dismiss Indictment"). After reviewing the facts of the case and pertinent law, we reverse the lower court's judgment, vacate Octavius's convictions, and remand for further proceedings consistent with this opinion.

## I. Facts and Procedural History

{¶ 2} In the early morning hours of November 1, 2010, Dennis Cole ("Cole") was shot at a party at his cousin's house in Cleveland. In July 2011, a jury found Octavius guilty of attempted murder and felonious assault, both with firearm specifications, and the court found him guilty of having a weapon while under disability. The court sentenced Octavius to 15 years in prison.

{¶ 3} On September 27, 2011, Octavius filed the 2011 Motion for New Trial based on his theory that his brother, Ricky Williams ("Ricky"), shot Cole. Attached to this motion is a statement purportedly signed by Ricky, in which he confessed to shooting Cole on the night in question ("First Written Confession"). This motion remained pending for more than 11 years.

{¶ 4} On April 19, 2012, this court affirmed Octavius's convictions on direct appeal. *State v. Williams*, 8th Dist. Cuyahoga No. 97039, 2012-Ohio-1741 ("*Williams I*"). In *Williams I*, this court's summation of testimony and argument presented at trial revealed that Octavius's defense theory was that Ricky shot Cole. *Id.* at ¶ 7, 22, and 23.

{¶ 5} In June 2012, Octavius submitted a "Screening Questionnaire" to the Wrongful Conviction Project at the Ohio Public Defender's Office ("WCP"). As a result of this application, the Conviction Integrity Unit of the Cuyahoga County Prosecutor's Office ("CIU") teamed up with the WCP to review Octavius's convictions.

{¶ 6} In November 2019, Octavius filed a motion for judicial release. In this motion, the WCP stated that, after an investigation, the CIU voted in favor of exonerating Octavius, and the "parties agree Octavius should be released * * *." The court held a hearing, and on December 17, 2019, granted Octavius's motion for judicial release, reduced his prison term accordingly, and placed Octavius on two years of community-control sanctions.[1]

{¶ 7} On January 21, 2020, Octavius filed the 2020 Motion for New Trial seeking to exonerate him of his convictions. In this motion, Octavius's counsel explained that, although the CIU recommended exoneration, the "elected prosecutor * * * declined to seek exoneration." Rather, the prosecutor agreed to Octavius's release from prison, as noted in the 2019 judicial release proceedings.

{¶ 8} Also on January 21, 2020, Octavius filed a supplement to his 2011 Motion for New Trial, which included the following attachments: a copy of the First Written Confession; another statement signed by Ricky, dated March 26, 2015, in which Ricky again confessed to shooting Cole ("Second Written Confession"); and a

---

[1] The docket reflects that Williams's community-control sanctions terminated by operation of law on December 17, 2021.

copy of an audio recording of an August 25, 2017 interview with an attorney from the CIU and Octavius's attorney from the WCP, in which Ricky yet again confessed to shooting Cole ("Audio Confession"). The supplement also included five affidavits from people who were at the party in question, in which the affiants stated that Ricky shot Cole; Octavius did not shoot Cole; Octavius was upstairs when the shots were fired; and Ricky was outside standing in the area from which the shots were fired.

{¶ 9} On December 22, 2021, Ricky filed a motion to quash a court order instructing that he be transferred from prison to the court for a January 4, 2022 hearing on Octavius's Motions for New Trial. According to Ricky's motion, the reason for the request to quash was that Ricky "will invoke his Fifth and Sixth Amendment rights to remain silent and [he] will not subject himself to examination by the government or cross-examination by Octavius Williams' counsel."

{¶ 10} The court held a hearing on Octavius's Motions for New Trial on January 4, 2022. Ricky had pled guilty to involuntary manslaughter and other associated offenses in an unrelated case on September 9, 2013, and was serving a 22-year-and-11-month prison sentence. Ricky appeared at the January 4, 2022 hearing. The court stated on the record that Ricky "accepted responsibility in an affidavit" for the attempted murder of Cole and inquired into whether Ricky was going to "accept a plea" to the attempted murder of Cole. Ricky's defense counsel requested a continuance while Ricky considered whether he would take a plea deal.

{¶ 11} On March 16, 2022, the state filed a motion in limine requesting that the court exclude "any out-of-court statements made by Ricky * * *, any evidence

regarding internal deliberations of the [CIU], and any 'expert' testimony regarding witness identifications." On May 19, 2022, the state filed a motion to quash the subpoenas issued to the CIU prosecuting attorney and former CIU prosecuting attorney who worked on Octavius's case, both of whom Octavius intended to call as witnesses at the upcoming hearing on his Motions for New Trial.

{¶ 12} The court held the hearing on Octavius's Motions for New Trial on May 23, 2022. The state stipulated to the authenticity of the Second Written Confession and the Audio Confession (the "Confessions"), in which Ricky confessed to shooting Cole on the night at issue. As a result of this stipulation, the court granted the state's motion to quash the subpoenas issued to the CIU attorneys.

{¶ 13} Also at the May 23, 2022 hearing, the court considered the state's motion in limine. The court granted the motion, excluding the "internal deliberations of the [CIU]" and the eyewitness identification expert witness who "would have been available at [Octavius's] trial * * *." The court stated that the "real issue" concerned Ricky's Confessions. The state argued that Ricky "previously indicated he would invoke his right against self-incrimination if called to testify," and his Confessions were inadmissible as hearsay. The court reserved ruling on the state's motion in limine as related to Ricky's Confessions and proceeded to the hearing on Octavius's Motions for New Trial.

{¶ 14} It was also established on the record at this hearing that Ricky "declined to take a plea" regarding the shooting of Cole. Further testimony and evidence presented at this hearing will be set forth later in this opinion.

{¶ 15} In January 2023, the court issued a journal entry denying Octavius's Motions for New Trial.[2] The court further stated that the "issue is then narrowed to whether to grant a new trial on the basis of newly discovered evidence."

{¶ 16} It is from this order that Octavius appeals, raising three assignments of error for our review.

> I. The trial court abused its discretion when it overruled Octavius Williams's motion for an order granting September 27, 2011 motion for a new trial under Crim.R. 33 and motion for dismissal of indictment under Crim.R. 48(B).
>
> II. The trial court abused its discretion when it granted the state's motion to quash the subpoenas of witnesses * * * and prohibited the admission of any evidence regarding the internal deliberations of the Conviction Integrity Unit.
>
> III. The trial court abused its discretion when it excluded the testimony of eyewitness identification expert Dr. Charles Goodsell.

## II. May 23, 2022 Hearing on Motions for New Trial

{¶ 17} Ricky appeared via Zoom at the May 23, 2022 hearing and exercised his Fifth Amendment right against self-incrimination regarding the shooting of Cole. Ricky's Audio Confession was played in court. Despite pleading the Fifth, Ricky identified his voice in the recording. Additionally, Ricky stated that if he had been "called to testify" as a witness at Octavius's trial in 2011, he would have testified. Asked if he would have "pled the Fifth" in 2011, Ricky answered as follows: "I don't know. No one ever knew. You can never know what somebody was thinking about

---

[2] In this journal entry, the court stated that it would "treat [Octavius's] 2020 Motion and Supplement as a properly filed *Motion for New Trial*, i.e., it grants leave to file same." (Emphasis sic.)

at that time * * *. You never know how you think in 2011. It's 2011. I was a kid back then."

{¶ 18} Cuyahoga County prosecutor Jose Torres and Octavius's defense attorney Joanna Sanchez were present with Ricky during the Audio Confession. In the recording, Ricky stated as follows: By the end of the party, Cedric Johnson ("Johnson") was drunk and "got into it" with Arden Terry ("Terry"), who is Octavius and Ricky's father. Johnson was waving a gun at Terry and shooting in the air. Ricky came outside and told Johnson to put the gun down. At that point, Johnson fired his gun toward Terry and Ricky. Ricky feared for his and Terry's life and pulled out a .32-caliber gun. Johnson "raised into a * * * rage" and continued firing his gun. Ricky fired back, aiming for Johnson's feet. Cole, "out of nowhere" jumped in front of Ricky's gun and punched Ricky in the face. The next thing Ricky remembered was Cole on the ground holding his chest. At this point, Terry told Ricky to leave and wait until everything "died down." According to Ricky, Octavius was not involved in the fight or shooting.

{¶ 19} During the Audio Confession, Ricky identified the Second Written Confession that he authored and signed in which he admitted that he shot Cole. Ricky read the Second Written Confession out loud during the interview, and the details contained in this document are nearly identical to the details in the Audio Confession.

{¶ 20} Kimberly Payne ("Payne") testified that, in the past, she worked for Ohio Savings Bank, and as part of her job, she would notarize various documents for

bank customers, such as a lost savings book affidavit, a change in beneficiary, or a title change. Payne testified that she does not know Octavius or Ricky, and she did not notarize any handwritten documents or affidavits. Payne further testified that if she notarized something but she "didn't know the customer too well," she "would put their driver's license under where [she] signed and notarized."

{¶ 21} Payne was shown the First Written Confession, which was purportedly signed by Ricky and purportedly notarized by Payne, in which Ricky allegedly confessed to shooting Cole. However, Payne testified that she did not notarize this document, and she had "no idea" how her signature appeared at the bottom of the page.

{¶ 22} Larry VanCant, II ("VanCant") testified that he was an investigator for the Ohio Public Defender WPC from 2013 to 2016. On March 26, 2015, VanCant interviewed Ricky, who was incarcerated, as part of Octavius's case. VanCant was shown the Second Written Confession, which is handwritten and signed by Ricky, in which Ricky confessed to shooting Cole on the night of October 31, 2010.[3] VanCant, who also signed this document, testified that he personally witnessed Ricky write the Second Written Confession "with his own pen."

{¶ 23} Ronald Skingle ("Skingle") testified that he is an attorney, and he was appointed to represent Octavius in this attempted murder case in 2011. According to Skingle, Kenneth McElroy ("McElroy") "asked if he could sit second chair and

---

[3] The shooting occurred at slightly past midnight on November 1, 2010.

assist me in that trial, which I agreed." McElroy filed Octavius's 2011 Motion for New Trial.[4] Asked what his "theory" or "approach" was at Octavius's trial, Skingle testified as follows:

> Well, my theory of the case was that his brother Ricky Williams was the individual who shot Dennis Cole. Basically from the evidence that — again, this is 11 years ago. * * * [M]y recollection of the trial was that — my theory was that Ricky Williams was the shooter. That was number one.

> And I think what I tried to draw out at trial or the evidence I tried to present at trial was consistent with that theory. I recall that [a witness] ID'd Ricky Williams as the shooter in a photo lineup. I know that there w[ere] a few witnesses, a female witness and another male witness that w[ere] downstairs when the shooting occurred and saw that * * * Cole, Ricky * * * and [another witness] were present during that time.

> There was evidence that I recall [Octavius] did not test positive for [gunshot residue]. There w[ere] no fingerprints to my recollection on the weapon. There was another witness that did test positive for [gunshot residue], I believe.

{¶ 24} According to Skingle, the state did not present any physical evidence implicating Octavius at trial. The only evidence linking Octavius to the shooting was Cole's identification of "Ardy's son,"[5] and later identification of Octavius, as the person who shot Cole. Skingle did not speak to Ricky before or during Octavius's trial, and he did not "learn before or during trial that Ricky had been responsible for the shooting * * *. That he was actually making a confession of some sort." Skingle

---

4 On October 13, 2011, just over two weeks after filing Octavius's motion, which included the First Written Confession, McElroy was indefinitely suspended from the practice of law for forging documents and tampering with evidence. *See Cleveland Metro. Bar Assn. v. McElroy*, 140 Ohio St.3d 391, 2014-Ohio-3774, 18 N.E.3d 1191.

5 "Ardy" refers to Arden Terry.

testified that Ricky was on the witness list, and he subpoenaed Ricky to testify at Octavius's trial, but to Skingle's knowledge, Ricky never appeared at trial. A copy of this subpoena, dated June 17, 2011, was introduced into evidence at the May 23, 2022 hearing. According to Skingle, if he "had" Ricky's confession at the time of trial, he would have "used the statement." Skingle's representation of Octavius ended when Octavius was convicted.

## III. Law and Analysis

### A. Motion for a New Trial

{¶ 25} Pursuant to Crim.R. 33(A)(6), the court may grant a defendant a new trial "[w]hen new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial." The Ohio Supreme Court has set forth the following test regarding newly discovered evidence:

> To warrant the granting of a motion for a new trial in a criminal case, based on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence.

*State v. Petro*, 148 Ohio St. 505, 76 N.E.2d 370 (1947), at syllabus. *See also State v. Hatton*, 169 Ohio St.3d 446, 2022-Ohio-3991, 205 N.E.3d 513, ¶ 32-33 (noting that "the *Petro* standard will apply in resolving the merits of [a] motion for a new trial under Crim.R. 33(A)(6)").

{¶ 26} We review a trial court's decision on a motion for a new trial for an abuse of discretion. *State v. Cannon*, 8th Dist. Cuyahoga No. 103298, 2016-Ohio-3173, ¶ 16. A trial court abuses its discretion when its decision "'is unreasonable, arbitrary or unconscionable.'" *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.3d 151, 157, 404 N.E.2d 144 (1980). The Ohio Supreme Court recently explained that an abuse of discretion "involves more than a difference in opinion." *State v. Weaver*, 171 Ohio St.3d 429, 2022-Ohio-4371, 218 N.E.3d 806, ¶ 24. That is, a trial court's judgment that is "profoundly and wholly violative of fact and reason" constitutes an abuse of discretion. *Id.*

{¶ 27} "When reviewing motions for a new trial, a trial court may weigh the credibility of affidavits submitted in support of the motion in determining whether to accept the affidavit as true statements of fact." *State v. White*, 8th Dist. Cuyahoga No. 105430, 2017-Ohio-6984, ¶ 16. The Ohio Supreme Court listed the following factors that courts "should consider" when "determining the credibility of supporting affidavits in postconviction relief proceedings":

> (1) whether the judge reviewing the postconviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial.

*State v. Calhoun*, 86 Ohio St.3d 279, 285, 714 N.E.2d 905 (1999). "Moreover, a trial court may find sworn testimony in an affidavit to be contradicted by evidence in the

record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony." *Id.*

### 1. The Trial Court's January 2023 Journal Entry Denying the Motions for New Trial and Motion to Dismiss Indictment

{¶ 28} Pertinent to this appeal, the trial court found as follows regarding the *Petro* factors: without analysis, the court found that Octavius met the requirements under factors (2), (3), and (4), namely that the evidence at issue "has been discovered since the trial," "could not in the exercise of due diligence have been discovered before the trial," and "is material to the issues." *Petro*, 148 Ohio St. at 505, 76 N.E.2d 370.

{¶ 29} The court further found that Ricky's "transparently fraudulent" First Written Confession was "the [defense's] initial clumsy attempt at ginning up a written confession [that] taints the entire enterprise." The court concluded that the state "effectively discredited" this statement via Payne's testimony that she did not notarize the First Written Confession. The court further found that the First Written Confession was "followed years later by a more carefully planned effort once Ricky, now incarcerated for decades, was willing to provide an actual statement (albeit outside of court) to, in his own words, 'help [his little] brother.'" The court also noted that it was "mindful that when Ricky was given the opportunity to confirm his purported confessions on the witness stand, he remained silent." The court's journal entry does not make any findings or conclusion regarding the Audio Confession, other than referring to it as "the unsworn audio statement he made in 2017."

{¶ 30} In denying Octavius's Motions for New Trial, the court concluded as follows:

> This is not the species of evidence that discloses a strong probability that it will change the result of a new trial. It is also cumulative, because the defense theory of the case, as revealed not only in the hearing but in [*Williams I*], was that Ricky was the actual shooter. Instead, it merely impeaches or contradicts some (but by no means all) of the former evidence. Some witnesses testified that Ricky was the shooter. The jury rejected that testimony. As the State remarks, the crux of Defendant's argument is that the jury simply got it wrong: "This case was ultimately about credibility and the jury believed the victim's identification over the self-serving testimony of Defendant's family members." * * * The Court rejects Defendant's argument that Ricky's purported confession, which the State aptly characterizes as a family convenience, should require disturbing the jury's verdict. The Motion for New Trial is denied.
>
> In light of the above, there is no reason to consider Defendant's Motion for Dismissal of Indictment * * *. It is denied in its entirety.

## 2. Analysis

{¶ 31} Because the Second Written Confession and the Audio Confession are dispositive of this appeal, we limit our discussion to these two pieces of newly discovered evidence. While we agree with the trial court that the First Written Confession is not credible, we cannot say that it "tainted the entire enterprise."

### a. The *Petro* Factors

{¶ 32} First, we review whether Ricky's Confessions "disclose[] a strong probability that [they] will change the results if a new trial is granted." Ricky's Confessions that he shot Cole are detailed and consistent with other evidence presented at Octavius's trial. Ricky stated that, after seeing Johnson point a gun at Terry and start shooting, Ricky "pull[ed] out a .32 caliber and started [to] shoot at

[Johnson]. * * * [T]hat [is] when [Cole] run up on me and hit me with his hand in my face as I was shooting and that [is] how [Cole] got shot. He r[a]n into the bullets. * * *."

{¶ 33} In *Williams I*, this court found the following, which supports Ricky's Confessions: Three witnesses testified that Ricky was "in the backyard during the shooting * * *" and that Octavius was inside the house "the entire time * * *. One of the [witnesses] claimed that Cole ran up and punched Ricky before Ricky shot Cole * * *." *Id.* at ¶ 7. Our review of the record shows that Cole initially identified the shooter as "Ardy's son" and moments later identified him as Octavius. Evidence in the record shows that Cole was highly intoxicated on the night in question and suffered from hallucinations at the hospital later that night. Furthermore, there is no forensic evidence linking Octavius to the shooting, including the fact that Octavius's hands tested negative for gunshot residue at the scene within eight minutes of the shooting.

{¶ 34} We find that Ricky's Confessions, if believed, would exonerate Octavius. Therefore, the Confessions "disclose[] a strong probability that [they] will change the results if a new trial is granted."

{¶ 35} Second, we review whether Ricky's Confessions have "been discovered since the trial." The trial court found that this requirement was met, and we agree. The Confessions were made in 2015 and 2017. Octavius's trial occurred in 2011.

{¶ 36} Third, we review whether Ricky's Confessions "could not in the exercise of due diligence have been discovered before the trial." The trial court found that this requirement was met, and we agree. Although the theory that Ricky shot Cole was part of Octavius's trial, nothing in the record suggests that Ricky confessed to the shooting until after Octavius was convicted. Ricky was subpoenaed to testify at trial but did not appear. It is impossible to know what Ricky would have testified to had he been called as a witness at Octavius's trial. Lawyers do not have crystal balls to predict the future. What we know now is that when Ricky finally did testify at the 2023 hearing, he authenticated the Audio Confession despite exercising his right to remain silent. Also at this hearing, Ricky stated that he did not know whether he would have exercised his Fifth Amendment right against self-incrimination in 2011. We are mindful that the newly discovered evidence in this case is Ricky's Confessions — it is not the theory that Ricky was the shooter. And nothing in the record suggests that Ricky's Confessions "existed" prior to Octavius's trial.

{¶ 37} Fourth, we review whether Ricky's Confessions are "material to the issue." The trial court found that this requirement was met, and we agree. It is axiomatic that a confession by Ricky, if believed, is material to this case and would in fact exonerate Octavius.

{¶ 38} Fifth, we review whether Ricky's Confessions are "not merely cumulative to former evidence." Ohio courts have held that "[w]here testimony amounts to a confession, which, if believed, would lead to the conviction of the

witness and the exoneration of the person convicted at trial, the fact that such a confession exists may itself be regarded as newly discovered evidence, even though the evidence recited during the course of the confession was duplicated at trial." *State v. Barber*, 3 Ohio App.3d 445, 448, 445 N.E.2d 1146 (10th Dist.1982). In the case at hand, Ricky's Confessions are consistent with some of the evidence admitted at Octavius's trial. Witnesses testified that Octavius was upstairs when Cole was shot in the backyard and that Ricky was among the people in the backyard when Cole was shot. Additionally, one witness testified that Ricky shot Cole. Nobody, however, testified that Ricky confessed to shooting Cole. Accordingly, we find that Ricky's Confessions are "not merely cumulative" to evidence presented at Ricky's trial.

{¶ 39} Sixth, we review whether Ricky's Confessions do "not merely impeach or contradict the former evidence." The only evidence presented at trial that contradicts Ricky's Confessions is Cole's identification of Octavius as the person who shot him. We note again that Cole identified Octavius after he identified the more-encompassing "Ardy's son" as the shooter. Ohio courts have interpreted this *Petro* factor as follows:

> "[W]e do not read *Petro* as establishing a per se rule excluding newly discovered evidence as a basis for a new trial simply because that evidence is in the nature of impeaching or contradicting evidence. The test is whether the newly discovered evidence would create a strong probability of a different result at trial, or whether it is merely impeaching or contradicting evidence that is insufficient to create a strong probability of a different result."

*White*, 8th Dist. Cuyahoga No. 105430, 2017-Ohio-6984, at ¶ 19, quoting *Dayton v. Martin*, 43 Ohio App.3d 87, 90, 539 N.E.2d 646 (2d Dist.1987). Accordingly, Ricky's Confessions do "not merely impeach or contradict" the evidence presented at Octavius's trial.

{¶ 40} We find the case at hand similar to *State v. Irwin*, 184 Ohio App.3d 764, 2009-Ohio-5271, 922 N.E.2d 981 (7th Dist.), in which the court found that a confession was newly discovered evidence that satisfied all six of the *Petro* factors. In *Irwin*, two witnesses testified at the hearing on the defendant's motion for a new trial that a man who was not the defendant confessed to the murder in question. First, the court found that "[t]heir testimony may have been just enough to create a reasonable doubt as to appellant's guilt in the mind of at least one juror." *Id.* at ¶ 191. Second and third, the court found that, "although this evidence was discovered in the eleventh hour of trial," it could not have been discovered before trial with the exercise of due diligence. *Id.* at ¶ 192. The court further found that "even had counsel interviewed [the man] prior to trial it is highly improbable that [the man] would have confessed to the murder." *Id.* at ¶ 193. Fourth, the court found that the confession was material. *Id.* at ¶ 194. Fifth and sixth, the court found that this evidence was not cumulative or contradictory, because "no one testified at all regarding * * * the fact that someone else may have confessed." *Id.* at ¶ 196.

### b. The *Calhoun* Factors

{¶ 41} We next look at the *Calhoun* factors to assess the credibility of the Second Written Confession and the Audio Confession. We are mindful that

*Calhoun*, 86 Ohio St.3d 279, 285, 714 N.E.2d 905, applies to assessing the credibility of affidavits. As noted, the substantive averments in Ricky's Confessions are the same, and at the May 23, 2022 hearing, the state stipulated to the authenticity of the Confessions. Therefore, by way of analogy, we apply the *Calhoun* factors to Ricky's Confessions.

{¶ 42} First, it is easily discernable from the record in the instant case that the judge who reviewed Octavius's Motions for New Trial also presided over Octavius's trial.

{¶ 43} Second, the Confessions contain consistent language and were made by the same person approximately two years apart. In our view, this lends to their credibility.

{¶ 44} Third, Ricky's Confessions do not "contain or rely on hearsay."

{¶ 45} Fourth, Ricky and Octavius are brothers, and Ricky was, and still is, incarcerated at the times he confessed to shooting Cole.

{¶ 46} Fifth, we consider "whether the [Confessions] contradict evidence proffered by the defense at trial." Not only do Ricky's statements not contradict the defense's theory at trial, the statements align with Octavius's theory that Ricky shot Cole. Additionally, we note that Ricky did not testify at Octavius's trial, therefore, nothing in his Confessions contradicts "evidence in the record by the same witness," and, as previously noted, Ricky's Confessions are not internally inconsistent.

{¶ 47} In summary, we find that the Second Written Confession and the Audio Confession are credible under the *Calhoun* factors as applied to Octavius's

Motions for New Trial. Moreover, as previously stated, the Second Written Confession and the Audio Confession satisfy all six of the *Petro* factors.

{¶ 48} Accordingly, upon review, we find that the trial court abused its discretion when it denied Octavius's Motions for New Trial pursuant to Crim.R. 33(A)(6).

### B. Motion to Dismiss Indictment

{¶ 49} Pursuant to Crim.R. 48(B), the court may dismiss an indictment, and "[i]f the court over objection of the state dismisses an indictment * * *, it shall state on the record its findings of fact and reasons for the dismissal." In *State v. Hollins*, 8th Dist. Cuyahoga No. 103864, 2016-Ohio-5521, ¶ 16, this court held that "a court has inherent power to regulate the practice before it and protect the integrity of its proceedings, which includes a court's power to sua sponte dismiss a case." The Ohio Supreme Court has held that Crim.R. 48(B) "does not limit the reasons for which a trial judge might dismiss a case, and we are convinced that a judge may dismiss a case pursuant to Crim.R. 48(B) if a dismissal serves the interest of justice." *State v. Busch*, 76 Ohio St.3d 613, 615, 669 N.E.2d 1125 (1996). Furthermore, "Crim.R. 48(B) does not require the trial court to hold a hearing when it dismisses a case * * *." *State v. Carabello*, 8th Dist. Cuyahoga Nos. 105021 and 105022, 2017-Ohio-4449, ¶ 11.

{¶ 50} Turning to the second part of Octavius's first assignment of error, which concerns the Motion to Dismiss Indictment, we find that Octavius has failed

to establish on appeal that the trial court abused its discretion by denying this motion.

{¶ 51} Accordingly, Octavius's first assignment of error is sustained as it relates to the Motion for New Trial and overruled as it relates to the Motion to Dismiss Indictment.

### C. Remaining Assignments of Error

{¶ 52} Octavius's second and third assignments of error relate to the admissibility of evidence at the hearing on his Motions for New Trial. Having found that the trial court erred by denying the Motions for New Trial, we find that these assignments of error are moot. *See* App.R. 12(A)(1)(c) ("Unless an assignment of error is made moot by a ruling on another assignment of error," courts shall "decide each assignment of error * * *.").

## IV. Conclusion

{¶ 53} Judgment reversed. Octavius's convictions are vacated and this case is remanded to the trial court for proceedings consistent with this opinion.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, JUDGE

EILEEN T. GALLAGHER, J., CONCURS;
KATHLEEN ANN KEOUGH, A.J., CONCURS IN PART AND DISSENTS IN PART
(WITH SEPARATE OPINION)

KATHLEEN ANN KEOUGH, A.J., CONCURRING IN PART AND DISSENTING IN
PART:

{¶ 54} I concur with the majority's judgment that the trial court abused its discretion when it denied Octavius's Motions for New Trial. I respectfully dissent, however, from its judgment overruling the first assignment of error as it relates to Octavius's motion to dismiss the indictment.

{¶ 55} The majority finds that Octavius "failed to establish" that the trial court abused its discretion by denying the motion to dismiss, but the majority's opinion itself establishes that the indictment should be dismissed in the interest of justice. The majority states that in 2019, the CIU of the prosecutor's office "voted in favor of exonerating Octavius." (Maj. Opinion, ¶ 6.) To "exonerate" someone means "to clear from accusation or blame." https://www.Merriam-Webster.com/dictionary/exonerate (accessed January 31, 2024). It "implies a complete clearance from an accusation or charge and from any attendant suspicion of blame or guilt." *Id.* Thus, the state apparently believed as early as 2019 that Octavius should be cleared from any suspicion of involvement in Cole's attempted

murder. The majority also finds that Ricky's Second Written Confession and Audio Confession, in which he confessed to shooting Cole, "are credible." (Maj. Opinion, ¶ 8, 47.) As acknowledged by the majority, the real shooter has confessed and the state believes that Octavius should be cleared of any blame for the shooting. Under these circumstances, a new trial would be a total waste of judicial resources and would not in any way serve the interests of justice. The indictment should be dismissed.