[Cite as *State v. Fischer*, 2024-Ohio-4801.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                    :

      Plaintiff-Appellee,              :

                                                        No. 22AP-101
v.                                               :                    (M.C. No. 2021 CRB 015708)

Henry M. Fischer,                                :                    (REGULAR CALENDAR)

      Defendant-Appellant.             :

---

D E C I S I O N

Rendered on October 3, 2024

---

**On brief:** *Zach Klein*, City Attorney, *Melanie R. Tobias-Hunter*, and *Orly Ahroni*, for appellee. **Argued:** *Orly Ahroni.*

**On brief:** *Capenter Lipps LLP*, *Kort Gatterdam,* and *Erik P. Henry*, for appellant. **Argued:** *Kort Gatterdam.*

---

APPEAL from the Franklin County Municipal Court

BOGGS, J.

{¶ 1} Defendant-appellant, Henry M. Fischer, appeals the judgment of the Franklin County Municipal Court convicting him of public indecency in violation of R.C. 2907.09(A)(2). For the following reasons, we affirm the trial court's judgment.

## I. FACTS AND PROCEDURAL BACKGROUND

{¶ 2} The events surrounding the offense for which Fischer was convicted took place on July 16, 2021, in a restroom stall at an Asian buffet restaurant on Broad Street in Columbus, Ohio. At trial, A.R., an 11-year-old boy, testified that he was dining at the Asian buffet restaurant with three of his siblings when he went to the restroom to defecate. While A.R. was in the stall, he heard someone come into the restroom and enter the stall next to him. A.R. testified that the individual in the adjoining stall laid his phone on the floor and was looking at pictures and videos. (Nov. 29, 2021 Tr. Vol. I at 109.) A.R. said that the

pictures and videos were of a woman, who was at the Asian buffet restaurant with Fischer, that the pictures and videos were of a sexual nature, and that the individual had started masturbating. *Id*. at 111. A.R. testified that the individual moved the phone under the stall wall into A.R.'s stall about four times, to show A.R. the pictures. *Id*. at 114. Then A.R. stated that the individual maneuvered under the divider and into A.R.'s stall, continued to masturbate in front of A.R., and put his hand on A.R.'s leg. *Id*. at 115. A.R. said the individual asked him, "[y]ou like that?" *Id*. at 115. A.R. testified that he did not respond, the individual continued to masturbate in front of him, and then said, "[o]h, my bad. I thought you were an adult." *Id*. at 133.

{¶ 3} A.R. said the individual then crawled back under the stall divider, washed his hands, and left the restroom. A.R. finished in the restroom and returned to his siblings. His siblings noticed he was upset and crying and asked him what was wrong. *Id*. at 119. A.R. then told his brother that he wanted to leave, but he finally pointed to Fischer and identified him as the individual in the stall. *Id*. at 119.

{¶ 4} In his testimony, A.R. described the individual in the stall as having a "little beard" or a "shaved beard," with blonde or brownish hair, and wearing a green shirt. *Id*. at 118-19. A.R. also testified that the man in the stall was wearing jean shorts and had a "weird accent" that he thought was German or Russian. *Id*. at 142. At trial, A.R. testified that he did not see the person who was in the bathroom with him in the courtroom despite Fischer being present, albeit wearing a face mask. *Id*. at 118-19.

{¶ 5} E.M., A.R.'s older brother, testified at trial that when A.R. returned to their table after going to the bathroom he was crying, very shaky, and that he wanted to go home. *Id*. at 155. E.M. testified that A.R. told him someone else had been in the bathroom with him and had shown him something. *Id*. at 155. At trial, E.M. identified Fischer as the man that A.R. had pointed to after he came back from the bathroom. *Id*. at 156. E.M. then testified that he confronted Fischer to ask what he had shown A.R., to which Fischer responded angrily that he had not shown A.R. anything and asked E.M. "[w]hy are you accusing me?" *Id*. at 158, 178. E.M. then called his mother and then called the police. *Id*. at 158. During E.M.'s testimony, the state presented video security footage from the Asian buffet restaurant the day of the incident. E.M. confirmed from the video that his brother went to the restroom and that, shortly thereafter, Fischer did as well. *Id*. at 163-64.

**{¶ 6}**   The state also called Anthony Muscaro, a police officer with the city of Columbus, who responded to the initial call to the Asian buffet restaurant and interviewed A.R.  *Id*. at 185.  Muscaro testified that A.R. told him while he was using the restroom, Fischer poked his head underneath the stall divider and looked up at A.R.  Muscaro said A.R. said he looked down and saw a phone on the ground and that there were pictures on the phone of a nude female, some of a nude male, and some of both persons performing sexual acts.  *Id*. at 187.  Muscaro testified that A.R. said, after that happened four times, Fischer slid under the stall and positioned himself in front of A.R. and then proceeded to masturbate while holding the phone.  *Id*. at 187.  Muscaro said that A.R. thought the videos and photos on the phone were of Fischer with a woman.  Muscaro testified that A.R. said that Fischer said things such as "[o]h, do you like that one" and "[d]o you like her -- like watching her suck my balls?"  *Id*. at 188.  Muscaro further testified that A.R. told him Fischer then said, "[o]h, you are just a kid" and returned to his original stall under the divider and then exited the bathroom. Muscaro said he could tell A.R. was very uncomfortable, seemingly embarrassed, and that it was apparent A.R. was still processing what had happened.  *Id*. at 188.

**{¶ 7}**   Additionally, the state called Columbus Police Detective Brian Sheline. Detective Sheline first had contact with Fischer after Fischer discovered his image on a Columbus Police Department social media post and called to ask why his photo was on social media. (Tr. Vol. II at 212.)  On cross-examination, Detective Sheline testified that he obtained a search warrant for Fischer's phone.  *Id*. at 221.  The warrant included a subpoena for subscriber information for Fischer's T-Mobile phone number, as well as a subpoena for Google accounts tied to the same phone number.  *Id*. at 224.  Detective Sheline testified that no pornographic material was recovered from Fischer's phone and that "there would be no way to recover pornographic material from the records" covered by the T-Mobile and Google subpoenas.  *Id*. at 225.  Detective Sheline also testified that the Google subpoena did not come back with any pornographic material through the search history associated with Fischer's phone number.  *Id*. at 226.  Detective Sheline testified, that while he had possession of Fischer's phone, the police were not able to unlock the phone.  *Id*. at 225.

**{¶ 8}**   Prior to redirect examination of Detective Sheline, the state, in a conversation out of the hearing of the jury, requested the trial judge to allow the state to prompt testimony that Fischer refused to give the passcode to his phone to police.  The state argued

to the trial judge that defense counsel opened the door in their opening statement, when Ms. Kara McCole, one of Fischer's attorneys, made a reference that the police did not find any pornographic material on Fischer's phone. Specifically, Ms. McCole remarked in her opening statement:

> Here's what you are not going to see. When they arrested my client, Mr. Fischer, they took his cell phone. They got a warrant to search everything on that man's cell phone; they didn't find a single pornographic image. They got a warrant to search that man's [G]oogle searches, anything associated with that phone number.

*Id*. at 99-100.

{¶ 9} Mr. Steven Steinberg, on behalf of the state, asked to approach and reminded the court that there was a motion in limine to not discuss a separate felony case that had been filed and dismissed for lack of evidence, seemingly involving Fischer's cell phone. *Id*. at 100. Mr. Clark Torbett, Fischer's other co-counsel, argued that they were not going to talk about the felony case but were instead "trying to discredit the prosecuting witness from start to finish, his entire story." *Id*. at 100. The trial court judge allowed the comments in the defense counsel's opening statement, recognizing it as a permissible way to impeach A.R.'s credibility and it was also responsive to the state's opening statement that A.R. saw pornographic materials on Fischer's phone in the bathroom. *Id*. at 100. Ms. McCole continued her opening statement to say "they found no pornographic images on his phone. None. They did a search of all the google searches, to repeat myself, that Mr. Fischer had done on that phone. Zero searches for anything pornographic in nature." *Id*. at 101.

{¶ 10} The trial judge stated, "[the defense] laid out the groundwork in your opening statement that made it sound like the defendant provided the phone to law enforcement unlocked so they could view the phone, all the contents of the phone, and they did that and came back with nothing. That is absolutely the impression that I got from your opening statement. * * * That's not the case. * * * The reason they didn't find anything was because they didn't have complete access to the phone, but that's not how it came across to the jury or to me. It came across that they had an opportunity to search the entire contents of the phone, images, videos included, and didn't find anything." *Id*. at 238-40. The court then allowed the state to requestion Detective Sheline.

{¶ 11} Over the objection of defense counsel, the state asked Detective Sheline if he was able to get into Fischer's phone after he asked for the passcode. Detective Sheline answered that "No, he refused. He would not provide me the pass code for it." *Id.* at 242. Defense counsel on recross examination asked Detective Sheline if Fischer was under any obligation to provide his passcode to which Detective Sheline answered "no" and confirmed that, even with a warrant for "everything" in his phone, the Columbus Police Department was unable to access everything on Fischer's phone. *Id.* at 242.

{¶ 12} Following the state's witnesses, the defense moved for acquittal under Crim. R. 29, arguing that there was no positive identification of Fischer by A.R. in court. The court overruled the motion, reasoning that a rational trier of fact could find the essential elements, including the identification of Fischer as the individual in the bathroom with A.R., had been proven beyond a reasonable doubt. *Id.* at 250.

{¶ 13} The defense called Fischer as a witness on his own behalf. Fischer testified that, on the evening of July 16, 2022, he was at the Asian buffet restaurant with his girlfriend to celebrate before they moved out of state. *Id.* at 252. Fischer testified that he went into the restroom to defecate and that he was looking at his phone, but not at pornography, while he was in the stall. *Id.* at 253-54. Fischer testified that he placed his phone on the floor in order to wipe himself, then he exited the stall, washed his hands, and left the restroom. *Id.* at 256. Fischer testified that when he returned to the table, he and his girlfriend decided to leave. Shortly after paying the bill at the counter, Fischer was confronted by E.M. and was asked, "what did you show my little brother?" *Id.* at 259. Fischer testified that he was angry and confused by the allegation.

{¶ 14} Fischer stated that he and his girlfriend walked to their car, smoked a cigarette, and stayed in the parking lot for several minutes before they left. *Id.* at 264. Fischer denied showing anyone pictures or videos on his phone, masturbating in the bathroom, crawling into another stall, and showing his penis to anyone. *Id.* at 270-71. He also denied speaking Russian or German and claimed that he was wearing gym shorts, not jeans or jean shorts, on the day of the incident. After Fischer's testimony, the defense rested and renewed its Crim.R. 29 motion for acquittal, again noting that A.R. had not made an in-court identification. The court stated, "I was somewhat surprised that you didn't ask the defendant to remove his mask, which would have probably made identification somewhat

easier." *Id.* at 285. The court overruled the defense's motion, noting that A.R. identified Fischer at the time of the incident and that E.M. identified him in court. *Id.* at 289.

{¶ 15} Following counsels' closing arguments, the jury received their instructions and returned a guilty verdict. Fischer now timely appeals.

## II. ASSIGNMENTS OF ERROR

{¶ 16} Fischer raises five assignments of error:

(1) The trial court violated appellant's rights to due process and a fair trial when it entered a judgment of conviction based on insufficient evidence and against the manifest weight of the evidence in violation of appellant's rights under the United States and Ohio Constitutions.

(2) The trial court erred in admitting the out-of-court identification of appellant as the perpetrator as substantive evidence thereby depriving appellant of a fair trial and due process.

(3) The trial court erred in admitting evidence of appellant exercising his constitutional rights to not provide law enforcement with the pass code to his cellular telephone contrary to the Fourth and Fifth Amendments to the United States Constitution.

(4) Prosecutorial misconduct denied appellant his constitutional rights to due process and to a fair trial.

(5) Appellant was deprived of the effective assistance of trial counsel in violation of appellant's rights under the Sixth and Fourteenth Amendments to the United States Constitution, and Section 10 and 16, Article I of the Ohio Constitution.

## III. LEGAL ANALYSIS

### A. Assignment of Error No. 1

{¶ 17} In Fischer's first assignment of error, he challenges the sufficiency and the manifest weight of the evidence, respectively, in supporting his conviction. Sufficiency and manifest weight of the evidence are distinct legal concepts. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). A finding that a conviction is supported by the manifest weight of the evidence, however, necessarily includes a finding that the conviction is supported by sufficient evidence and will therefore be dispositive of the issues of sufficiency of the evidence. *State v. McCrary*, 10th Dist. No. 10AP-881, 2011-Ohio-3161, ¶ 11. We therefore

first consider whether Fischer's conviction is supported by the manifest weight of the evidence.

{¶ 18} With respect to the weight of evidence, the Supreme Court of Ohio has explained:

> Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*."

(Emphasis sic.) *Thompkins* at 387, quoting *Black's Law Dictionary* 1594 (6th Ed.1990). A challenge to the manifest weight of the evidence presents a question of persuasion. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 19.

{¶ 19} When considering a manifest weight argument, the reviewing court may consider the credibility of the witnesses. *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6. However, this court is guided by the presumption that, "the jury * * * 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Id.*, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Disagreement over the credibility of a witness is not a sufficient reason to reverse a judgment on manifest weight grounds. *State v. G.G.*, 10th Dist. No. 12AP-188, 2012-Ohio-5902, ¶ 7. Therefore, we give the jury's determination of witness credibility great deference. *State v. Redman*, 10th Dist. No. 10AP-654, 2011-Ohio-1894, ¶ 26, citing *State v. Jennings*, 10th Dist. No. 09AP-70, 2009-Ohio-6840, ¶ 55; *State v. Covington*, 10th Dist. No. 02AP-245, 2002-Ohio-7037, ¶ 28.

{¶ 20} Fischer was convicted of public indecency under R.C. 2907.09(A)(2) which states that:

> No person shall recklessly do any of the following, under circumstances in which the person's conduct is likely to be viewed by and affront others who are in the person's physical proximity and who are not members of the person's household:
>
> * * *

(2) Engage in sexual conduct or masturbation[.]

{¶ 21} In arguing his conviction is against the manifest weight of the evidence, Fischer disputes the credibility of A.R.'s testimony at trial. Specifically, Fischer points us to A.R. not identifying Fischer in court as the individual who came into the bathroom stall and to the fact that A.R.'s physical description of the individual in the bathroom was not entirely consistent with Fischer's appearance or clothing. Fischer also argues that A.R. did not mention masturbation to his brother at the Asian buffet restaurant, but only that someone had shown him something inappropriate. Fischer argues A.R.'s testimony "developed" later on. For example, Fisher points out that, at trial, A.R. said that the individual in the bathroom touched his leg, but he initially indicated only that Fischer just asked A.R. if he liked that.

{¶ 22} Although Fischer directs us toward certain evidence that might call into question A.R.'s credibility, as we have noted we will give great deference to a jury's determination of witness credibility, and an argument on the lack of credibility of a witness is insufficient to reverse judgment on manifest weight grounds. While Fischer clearly would have preferred the jury to believe his testimony over A.R.'s, the jury did not clearly lose its way by believing A.R. instead. A conviction is not against the manifest weight of the evidence simply because the jury believed the state's version of events over appellants. *State v. Gullick*, 10th Dist. No. 13AP-317, 2014-Ohio-1642, ¶ 11, citing *State v. Houston*, 10th Dist. No. 04AP-875, 2005-Ohio-4249, ¶ 38 (reversed and remanded in part on other grounds). We must give great deference to the jury's determination of witness credibility as the jury is in the best position to observe the demeanor of witnesses in weighing their credibility. *See State v. Huber*, 10th Dist. No. 18AP-668, 2019-Ohio-1862, ¶ 32; *Cattledge*, 2010-Ohio-4953, at ¶ 6; *Seasons Coal Co.* 10 Ohio St.3d at 80.

{¶ 23} While A.R. did not identify Fischer in court, possibly because Fischer was wearing a face mask, A.R. did positively identify him to his brother at the Asian buffet restaurant shortly after the incident in the bathroom. While at times conflicting, A.R. and Fischer also provided some parallel testimony. For instance, Fischer testified that he went into the bathroom, that he used the smaller stall as the larger stall was occupied, that he was looking through his phone while in the stall, and that he placed his phone on the floor at one point. All of this is consistent with A.R.'s testimony. A.R. was also able to describe Fischer's clothing at the time of the incident, in that he was wearing shorts, a green shirt,

and flip flops.  The state also presented video surveillance that showed Fischer and A.R. were the only ones who entered the bathroom during the relevant time, and there was no other evidence presented that anyone else entered the bathroom.

{¶ 24}  Fischer also argues that A.R.'s testimony was not credible because Fischer, at 5'10" and 180 pounds, was unlikely to crawl under a bathroom stall divider with only a 15-inch gap between the stall divider and the floor.  (Tr. Vol. II at 301.)  However, the jurors went to the Asian buffet restaurant, they viewed the bathroom firsthand, and made their own conclusions regarding whether it was feasible for Fischer to crawl underneath the stall divider.  *Id*. at 293.  Given this evidence, we do not see Fischer's conviction as the jury having lost its way.  Accordingly, we overrule Fischer's first assignment of error.

### B.  Assignment of Error No. 2

{¶ 25}  Fischer next argues he was denied a fair trial and due process by the admission of E.M.'s testimony, A.R.'s brother, on A.R.'s out-of-court identification of Fischer at the Asian buffet restaurant.  We note that Fischer failed to object to this testimony at trial and has thus waived all but plain error.  *State v. Slagle*, 65 Ohio St.3d 597 (1992).  To constitute plain error, the error must be obvious on the record, palpable, and fundamental, such that it should have been apparent to the trial court without objection.  *See State v. Tichon*, 102 Ohio App.3d 758, 767 (9th Dist.1995).  Moreover, plain error does not exist unless the appellant establishes that the outcome of the trial clearly would have been different but for the trial court's allegedly improper actions.  *State v. Waddell*, 75 Ohio St.3d 163, 166 (1996). Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice.  *State v. Phillips*, 74 Ohio St.3d 72, 83 (1995); *State v. Ospina*, 81 Ohio App.3d 644, 647 (10th Dist.1992).

{¶ 26}  E.M. testified that, at the Asian buffet restaurant, A.R. identified Fischer as the individual in the bathroom.  Fischer now argues that E.M.'s testimony constituted hearsay.  The state argues that A.R.'s prior out-of-court statement identifying Fischer was admissible as substantive evidence under Evid.R. 801(D)(1)(c).  We agree with the latter.

{¶ 27}  Evid.R. 801(D)(1) states in part: "A statement is not hearsay if * * * [t]he declarant testifies at trial * * * and is subject to examination concerning the statement, and the statement is * * * (c) one of identification of a person soon after perceiving the person, if the circumstances demonstrate the reliability of the prior identification."  Accordingly,

"(u)nder Evid.R. 801(D)(1)(c), a statement is not hearsay if (1) the declarant testifies at trial or a hearing and is subject to cross-examination on that statement, (2) it identifies a person soon after perceiving him, and (3) the circumstances demonstrate the reliability of that identification." *State v. Ramos-Aquino*, 10th Dist. No. 09AP-975, 2010-Ohio-2732, ¶ 11. Fischer argues that Evid.R. 801(D)(1)(c) does not apply, because the surrounding circumstances call into question the reliability of A.R.'s identification.

{¶ 28} We now in turn consider each prong under Evid.R. 801(D)(1)(c) and we find that each prong has been met. The parties do not dispute that the first two prongs have been met. First, A.R. testified at trial and was subject to cross-examination, and second, A.R. identified Fischer to E.M. soon after A.R. perceived Fischer. Fischer, however, does dispute the circumstances supporting the reliability of the prior identification. Again, Fischer argues that A.R.'s identification was unreliable based on what he characterizes as "poor and changed descriptions of the perpetrator." (Appellant's Brief at 23.) However, we are not persuaded by Fischer's arguments. A.R. was able to describe Fischer as the perpetrator in that he was wearing shorts, green shirt, and flip flops, even though he was mistaken about the *type* of shorts Fischer had been wearing. A.R. testified that he was confident that the person E.M. confronted at the Asian buffet restaurant was the perpetrator in the bathroom.

> Q. Okay. The person that [E.M.] was confronting, was that the person that you saw at the stall?
>
> A: Yes. I recognized the shirt; it was a green shirt.
>
> Q: Okay. Is there any doubt in your mind that the person [E.M.] was talking to was the same person that you had seen in the stall?
>
> A: Yes, Because when -- on the video -- I recognized the girl on the video.
>
> Q: I want to talk about what you saw on that date. When you saw [E.M.] talking to the person, did you believe that was the person who had been in the stall?
>
> A: Yes.
>
> Q: Did you have any doubt that that might not be the person?
>
> A: No.

(Tr. Vol. I at 119-20.)

{¶ 29} Fischer also argues that the prior identification is unreliable because A.R. was unable to identify Fischer as the perpetrator in court, but the failure of a declarant to make an in-court identification is irrelevant to the admissibility of a prior identification. *State v. Steward*, 10th Dist. No. 19AP-28, 2020-Ohio-4553, ¶ 39. This court stated that "Ohio courts have observed that the rationale for Evid.R. 801(D)(1)(c) is ' "that the perception made nearer the event is at least as likely, if not more likely, to be accurate than a subsequent identification in the court room." ' " *Id.*, quoting *State v. Houston*, 8th Dist. No. 64574, 1994 Ohio App. LEXIS 52 *8 (Jan. 13, 1994), quoting Staff Note to Evid.R. 801(D). "Further, where the record establishes that the prior identification satisfies the factors for admissibility under Evid.R. 801(D)(1)(c), that rule permits the introduction of such evidence 'for the truth of the matter asserted.' " *Id.*, quoting *Ramos-Aquino*, 2010-Ohio-2732, at ¶ 11.

{¶ 30} Given these facts and A.R.'s testimony, we find that E.M.'s testimony on A.R.'s out-of-court identification of Fischer was admissible under Evid.R. 801(D)(1)(c) as non-hearsay substantive evidence. Therefore, we overrule Fischer's second assignment of error.

### C. Assignment of Error No. 3

{¶ 31} In his third assignment of error, Fischer argues that the trial court erred in admitting Detective Sheline's testimony that Fischer refused to provide his passcode to his phone. Fischer argues this was in violation of his constitutional rights against self-incrimination and to privacy.

{¶ 32} The Fifth Amendment protects a defendant's right against self-incrimination, but there is no violation of the privilege when a reference to a defendant's invocation of the right against self-incrimination is a fair response to the defendant's claims. *State v. Ferguson*, 10th Dist. No. 07AP-999, 2008-Ohio-6677, ¶ 51, citing *United States v. Robinson*, 485 U.S. 25, 32 (1988). This court has found there to be no Fifth Amendment violation when a prosecutor questions a defendant about post-arrest silence when defense counsel has opened the door to the subject. *State v. Reed*, 10th Dist. No. 08AP-20, 2008-Ohio-6082, ¶ 20.

{¶ 33} In her opening statement, Fischer's co-counsel, Ms. McCole claimed that the police "got a warrant to search everything on that man's cell phone; they didn't find a single

pornographic image. They got a warrant to search that man's [G]oogle searches, anything associated with that phone number" and that "they found no pornographic images on his phone. None." (Tr. Vol. I at 100-01.) The trial court noted during a discussion with counsels in opening statements that this was in response to the state's opening statements that A.R. had seen pornographic images on Fischer's cell phone. Fischer's co-counsels also argued that they were attempting to discredit A.R.

{¶ 34} On cross-examination of Detective Sheline, Fischer's co-counsel, Ms. McCole, questioned Detective Sheline about the investigative subpoena for the contents of Fischer's phone.

> Q: What did [the phone companies] find, if anything?
>
> A: You know what, I don't recall specifically what the findings were. This was not so much an electronics based investigation as much as it was a personal interview type case. This is not something that focused solely on the electronic and phone reports and those type of things.
>
> Q: So you didn't find anything?
>
> A: Not that I can recall.
>
> Q: No pornographic material?
>
> A: From the phone records there would be no way to recover pornographic material from the records you just talked about.
>
> Q: You had in your possession the defendant's phone?
>
> A: Correct.
>
> Q: And no pornographic images were found on said phone?
>
> A: We were not able to unlock his phone.
>
> * * *
>
> Q: Google didn't come back with any [pornographic] searches, correct?
>
> A: Correct.

(Tr. Vol. II at 221.)

{¶ 35} On redirect, the state requested the court to allow the state to ask the detective about why the police were unable to access Fischer's phone, namely that Fischer

refused to give his passcode. The state argued that "They made it sound like they looked at the phone and nothing was found on the phone." *Id.* at 234. The trial court agreed with the state, over Fischer's objections. The court stated that the defense's "opening statement made it sound extremely clear to the jury that the phone was provided, the phone was searched and there were no images found on the phone. That is not the case." *Id.* at 237. The trial court judge then continued, stating that:

> [n]ow the case seems to be that while the phone was in the custody of law enforcement, they were unable to search the phone. And he did say that, but I think you opened the door there, and I think that the State has a right to ask him why were they not able to gain access to the phone.
>
> * * *
>
> [The defense co-counsel's opening statement] was that the phone was turned over to law enforcement and law enforcement found no images or videos on the phone. That is exactly what was said. That leads the jury to believe that law enforcement searched the phone. Now, I know that [the defense] can twist it and say, well, that's what happened, law enforcement had the phone and they didn't find anything. The reasons they didn't find anything was because they didn't have complete access to the phone, but that's not how it came across to the jury or to me. It came across that they had an opportunity to search the entire contents of the phone, images, videos included, and didn't find anything.

*Id.* at 237-40.

{¶ 36} With the court's approval, the state then proceeded to ask Detective Sheline on redirect if Fischer gave him the passcode. Detective Sheline stated, "No, he refused. He would not provide me the pass code for it." *Id.* at 242. On recross examination, the trial court allowed defense co-counsel to ask the detective if Fischer was under any obligation to provide his passcode to the police, to which Detective Sheline replied that Fischer was not. *Id.*

{¶ 37} In *United States v. Robinson*, 485 U.S. 25, 32 (1988), the United States Supreme Court held that: "[w]here the prosecutor on his own initiative asks the jury to draw an adverse inference from a defendant's silence, *Griffin* [*v. California,* 380 U.S. 609 (1965)] holds that the privilege against compulsory self-incrimination is violated. But whereas in this case the prosecutor's reference to the defendant's opportunity to testify is a fair

response to a claim made by defendant or his counsel, we think there is no violation of the privilege." The court further noted:

> [The] central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence. To this end it is important that both the defendant and the prosecutor have the opportunity to meet fairly the evidence and arguments of one another. The broad dicta in *Griffin* to the effect that the Fifth Amendment "forbids * * * comment by the prosecution on the accused's silence," must be taken in the light of the facts of that case. It is one thing to hold, as we did in *Griffin*, that the prosecutor may not treat a defendant's exercise of his right to remain silent at trial as substantive evidence of guilt; it is quite another to urge, as defendant does here, that the same reasoning would forbid the prosecutor from fairly responding to an argument of the defendant by adverting to that silence. There may be some "cost" to the defendant in having remained silent in each situation, but we decline to expand *Griffin* to preclude a fair response by the prosecutor in situations such as the present one.

(Internal citations omitted.) *Robinson* at 33.

{¶ 38} Here, we find no violation of Fischer's constitutional rights. As the trial court noted, Fischer's co-counsel's opening statements could lead a juror to believe that the police were able to search the entire contents of the phone and found no pornographic images or videos. Fischer's co-counsel's questioning of Detective Sheline further opened the door, when she asked if pornographic images were found on Fischer's phone, to which Detective Sheline responded that they were not able to unlock his phone. Here, the state's fair response, to offer a possible explanation for why no images or videos were found, did not infringe on Fischer's right against self-incrimination. The defense attempted to use Fischer's silence both as a sword, to state that no pornographic images were found on the phone, and a shield, to prohibit the state from explaining why that may be. By opening the door to the subject of the police's opportunity to discover pornographic photos or videos of Fischer's phone, Fischer may not complain about the state eliciting testimony that he did not provide the police with the passcode to his phone. We therefore overrule Fischer's third assignment of error.

### D. Assignment of Error No. 4

{¶ 39} Fischer's fourth assignment of error argues that the state committed prosecutorial misconduct by bolstering the veracity of A.R. throughout trial and by

conflating the elements of public indecency with the display of pornography on Fischer's phone to A.R. Because Fischer did not object to these errors at trial, we again proceed under a plain error standard of review.

{¶ 40} When reviewing allegations of prosecutorial misconduct, a court must determine whether the prosecutor's conduct was improper and, if so, whether the conduct prejudicially affected the defendant's substantial rights. *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, ¶ 162. Because prosecutorial misconduct implicates due process concerns, "[t]he touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, ¶ 238, quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982). Prosecutorial misconduct will not render a trial unfair if, "in the context of the entire trial, it appears clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper [conduct]." *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, ¶ 181.

{¶ 41} Fischer argues that the prosecutor improperly vouched for and bolstered A.R.'s credibility. The Supreme Court of Ohio has defined vouching as when the prosecutor implies knowledge of facts outside the record or places his or her personal credibility in issue. *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, ¶ 145; *see, e.g.*, *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 117; *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, ¶ 232.

{¶ 42} Fischer specifically takes issue with the prosecutor's comments about A.R. that Fischer argues improperly tipped the scales against Fischer. Fischer points this court to the prosecutor's comments during voir dire and in closing statements, such as, "And when we tell you that [A.R] has no reason to lie, we know we are reaffirming what you already know, because we talked to you about that in voir dire, in jury selection" and "Why would an 11-year-old make this up? * * * What motive does [A.R.] have to lie about this?" (Tr. Vol II at 297-98, 309.) Here, the prosecutor did not improperly vouch for A.R.'s credibility as a witness. The prosecutor fairly argued that A.R. was a reliable witness and lacked any motive to lie.

{¶ 43} Fischer also argues that the prosecutor committed misconduct by improperly suggesting to the jury in closing arguments that Fischer could be found guilty of R.C. 2907.09(A)(2) by recklessly showing A.R. pornographic images. Fischer points us to the prosecutor's comments that Fischer was "reckless when he showed another person graphic

pictures and videos of two adults engaged in sex acts underneath a bathroom stall." *Id.* at 295. However, on closer examination of the record, we note the prosecutor later said:

> I submit to you the crux of this case and the specific violation is that the defendant exposed himself, not that the defendant showed any type of video. That's not an element we have to prove. * * * The nature of this case, the nature of this crime is what we have proven, that the defendant entered A.R.'s stall, showed his penis, masturbated his penis, and we are asking that you make a finding of guilty on the one count before you, which is public indecency.

*Id.* at 311.

{¶ 44} We also note that the jury was properly instructed on the law and that we must presume the jury followed the instructions given to it by the judge. *See State v. Henderson*, 39 Ohio St.3d 24, 33 (1988). We therefore overrule Fischer's fourth assignment of error.

### E.  Assignment of Error No. 5

{¶ 45} In his fifth and final assignment of error, Fischer argues that he was deprived of the effective assistance of counsel in violation of his rights under the United States Constitution and the Ohio Constitution.

{¶ 46} To establish ineffective assistance of counsel, Fischer must show that his counsel's performance was deficient, and that counsel's deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In other words, "[t]his requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687. Under *Strickland*, appellate courts examine counsel's performance under a highly deferential standard, making every effort to "eliminate the distorting effects of hindsight." *Id.* at 689.

{¶ 47} Fischer first argues that his co-counsels failed to object to E.M.'s testimony about A.R.'s out-of-court identification of Fischer and to prosecutorial misconduct in voir dire and closing arguments. However, as we have already rejected Fischer's arguments on his assignments of error concerning the out-of-court identification and prosecutorial misconduct, we likewise find no ineffective assistance of counsel based on defense counsel's failure to object to those alleged errors, as the objections would have been overruled.

{¶ 48} Fischer also argues that his co-counsels were ineffective by opening the door to evidence that supported A.R.'s credibility during cross-examination of E.M. and Officer Muscaro. Fischer argues that his co-counsels erred in asking both E.M. and Officer Muscaro about their perceptions of A.R.'s truthfulness. E.M. had responded, "[h]e's actually not a liar," and Officer Muscaro responded, "I believe he was telling the truth." "The extent and scope of cross-examination clearly fall within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel." *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 146. Moreover, " 'an appellate court reviewing an ineffective assistance of counsel claim must not scrutinize trial counsel's strategic decision to engage, or not engage, in a particular line of questioning on cross-examination.' " *State v. Dorsey*, 10th Dist. No. 04AP-737, 2005-Ohio-2334, ¶ 22, quoting *In re Brooks*, 10th Dist. No. 04AP-164, 2004-Ohio-3887, ¶ 40.

{¶ 49} While potentially damaging to Fischer, we do not see his co-counsel's cross-examination of E.M. and Officer Muscaro as devoid of strategy. Defense co-counsel's cross-examination of E.M. showed that he may be biased toward his brother. Defense co-counsel's examination of Officer Muscaro was designed to establish that A.R.'s testimony had "developed" over time and that the police had conducted a weak investigation by not looking for any other potential witnesses. This court has acknowledged that, "[i]n Ohio, it is often difficult for attorneys in criminal trials to anticipate how a witness called by the opposing party will respond to questions because, unlike in civil cases, the Ohio Rules of Criminal Procedure do not provide for pre-trial discovery depositions." *State v. Harris*, 10th Dist. No. 21AP-678, 2023-Ohio-3994, ¶ 108.

{¶ 50} Fischer also argues that his co-counsels were ineffective in their opening statements and in the cross-examination of Detective Sheline. Fischer contends that his co-counsel's comments indicating that the police did not find pornographic images on his phone directly led to testimony that Fischer refused to provide his passcode to police in violation of his constitutional rights, as he argues in his third assignment of error.

{¶ 51} The state argues that this was not ineffective assistance of counsel but rather reflects the defense's strategy to discredit A.R. and that the state had the right to elicit a full explanation as to why no pornographic images were found. The state also contends that its questioning was brief and did not imply guilt by Fischer's refusal and that the court allowed defense co-counsel to elicit testimony from Detective Sheline that Fischer was not required

to share his passcode. The state points us to Supreme Court of Ohio's precedent that "[a] single comment by a police officer as to a suspect's silence without any suggestion that the jury infer guilt from the silence constitutes harmless error." *State v. Treesh*, 90 Ohio St.3d 460, 480 (2001).

{¶ 52} It is unclear from the record whether or not Fischer's co-counsels knew he did not provide his passcode to the police. It is also unclear whether defense co-counsels made adequate discovery requests that would have compelled the prosecution to provide the information to Fischer's legal team. The record before us only shows that the prosecution did not provide this information to Fischer's co-counsels, which we understand from their statement: "[w]e have not been given any evidence whatsoever that the defendant exercised his right to privacy by denying access to the phone." (Tr. Vol. II at 235.) However, this is not conclusive of whether Fischer's co-counsels were aware that he had not provided his passcode to police when they were formulating their trial strategy.

{¶ 53} When the record is unclear as to what information the attorneys used, or did not use, in developing their trial strategy, we cannot find that the opening statements and examination of Detective Sheline making the jury aware that no pornographic images were found on defendant's phone was unsound strategy. It is possible that Fischer's co-counsels strategically weighed the risk of the state providing evidence that Fischer did not provide his phone's passcode against the benefit of the jury concluding that no pornographic images or videos had been found on his phone. Since the record does not contain any evidence that counsel failed to make the necessary discovery requests to obtain this information and given the wide range of reasonable performance under *Strickland*, Fischer has not met his burden to show that his co-counsels' performance was ineffective, nor are we willing to indulge the "distorting effects of hindsight" to sustain his assignment of error here.

{¶ 54} Fischer also alleges ineffective assistance of counsel in his co-counsels' failure to object to the admission of a recorded phone call between Fischer and Detective Sheline. A trial counsel's failure to object does not amount to ineffective assistance of counsel unless the defendant can demonstrate a reasonable probability that, but for his counsel's failure to object, the result of the proceedings would have been different. *State v. Watts*, 10th Dist. No. 15AP-951, 2016-Ohio-5386, ¶ 42, citing *State v. Valentine*, 10th Dist. No. 14AP-893, 2016-Ohio-277, ¶ 24. We are not persuaded that the objection would have changed the results here. The recorded phone call demonstrated that Fischer denied guilt from the very

beginning. We also do not agree with Fischer's argument that Detective Sheline improperly vouched for A.R. on the phone call by questioning what reason A.R. would have to lie, when he simply explained to Fischer the allegation and that it was his job to determine what motive A.R. would cause him to lie. We also note that Fischer's defense co-counsels did object to portions of the phone call, which were ultimately excluded.

{¶ 55} Fischer next alleges that his co-counsels failed to object to unsworn, out-of-court statements that A.R. made to Officer Muscaro. Again, we are not persuaded by Fischer's arguments here. Fischer's co-counsels appeared to strategically seek out discrepancies between what A.R. told Officer Muscaro the day of the incident and A.R.'s testimony at trial. We do not think this is an indication of ineffective assistance of counsel, but rather is within the reasonable performance expected of attorneys at trial.

{¶ 56} Fischer also argues that his defense co-counsels were ineffective as they failed to object to the trial court's *Howard* charge, which was read in response to the jury's question what would happen if they could not come to a unanimous verdict. "[T]he *Howard* charge ' "is intended for a jury that believes it is deadlocked, so as to challenge them to try one last time to reach a consensus." ' " *State v. Norman*, 10th Dist. No. 12AP-505, 2013-Ohio-1908, ¶ 42, quoting *State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, ¶ 38, quoting *State v. Robb*, 88 Ohio St.3d 59, 81 (2000). "Whether the jury is irreconcilably deadlocked is essentially ' "a necessarily discretionary determination" ' for the trial court to make." *Norman* at ¶ 41 (noting trial courts weighing the *Howard* charge must evaluate circumstances specific to each individual case), quoting *Brown* at ¶ 37, quoting *Arizona v. Washington*, 434 U.S. 497, 510 (1978), fn. 28. Fischer provides little in his argument about how the trial court abused its discretion in reading the *Howard* charge, only that the decision by the court to do so was "premature." An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). We find no abuse of discretion here by the trial court and believe any objection to the reading of the *Howard* charge would not have been successful.

{¶ 57} Finally, Fischer argues that his co-counsels were ineffective based on the cumulative effect of their errors. "Under this doctrine, a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous errors does not individually constitute cause for reversal." *State v.*

*Graham*, 164 Ohio St.3d 187, 2020-Ohio-6700, ¶ 169.  *See also State v. C.D.S.*, 10th Dist. No. 20AP-355, 2021-Ohio-4492, ¶ 112.  In regards to a claim for ineffective assistance of counsel, "[e]ach assertion of ineffective assistance of counsel going to cumulative error depends on the merits of each individual claim; when none of the individual claims of ineffective assistance of counsel have merit, cumulative error cannot be established simply by joining those meritless claims together." *Graham* at ¶ 170.  As we have already rejected Fischer's individual claims of ineffective assistance of counsel, we find that he has failed to show cumulative error.  Accordingly, we overrule Fischer's fifth assignment of error.

## IV.  CONCLUSION

**{¶ 58}** Having overruled all five of Fischer's assignments of error, we affirm the judgment of the Franklin County Municipal Court.

*Judgment affirmed.*

BEATTY BLUNT and EDELSTEIN, JJ., concur.

_____

EDELSTEIN, J., concurring.

**{¶ 59}** Although I concur with the judgment reached by the majority, I write separately to address part of Mr. Fischer's fifth assignment of error and the grounds relied on by the majority to reach its decision.

**{¶ 60}** The majority suggests "[i]t is unclear from the record whether or not Fischer's co-counsels [even] knew [that] he did not provide his pass code to the police," and if they did not know, whether lack of such knowledge was reasonable.  (Majority Decision at ¶ 52.)  While that may be true, I do not find it to be an impediment to determining whether Mr. Fischer's counsel rendered deficient performance during his trial.  Regardless of whether his trial counsel knew Mr. Fischer had declined to provide a passcode for his phone to the police, I believe the attorneys rendered deficient performance in this case.

**{¶ 61}** If counsel truly did not know their client refused to share his passcode with the police, that reflects a failure to adequately investigate the case in preparation for trial.  Mr. Fischer's refusal either would have been reflected in the discovery materials provided by the state *or* competent counsel would have discussed the contents of the phone (or the lack thereof) with their client upon learning that his phone had been seized by the police.  Surely, if trial counsel's intended strategy was to challenge the credibility of A.R.'s account,

it was important to appreciate the distinction between the failure to recover inculpatory media items from the phone and the inability to search it. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland v. Washington*, 466 U.S. 668, 691 (1984). Of course, in some cases, it may not be clear whether an attorney would have had access to certain relevant information at the time of trial. *See, e.g.*, *State v. Williams*, 8th Dist. No. 112425, 2024-Ohio-469, ¶ 31 (granting motion for new trial based on "two pieces of newly discovered evidence"); *Brady v. Maryland*, 373 U.S. 83 (1963). But whether Mr. Fischer provided his passcode to the police certainly does not fall into that category. And so, irrespective of whether the trial attorneys *actually* knew Mr. Fischer refused to provide his passcode to the police, it is clear they *should have* known, and could have easily known by speaking to their client.

{¶ 62} Had Mr. Fischer's attorneys not remarked on the police's failure to find pornographic images on the phone during their opening statements, perhaps their failure to adequately investigate would have gone unnoticed and unchallenged. However, by affirmatively raising the issue without knowing the reason the police did not find any images, they, themselves, opened the door to inculpatory testimony about Mr. Fischer's refusal to cooperate and provide his passcode to the police.

{¶ 63} Under these facts, I do not believe that misrepresenting the evidence—due to counsel's failure to review discovery materials, failure to communicate with one's client, or otherwise—could be viewed as reasonable trial strategy. As the United States Supreme Court has explained, "strategic choices made after *thorough* investigation of law and facts relevant to plausible options are virtually unchallengeable." (Emphasis added.) *Strickland* at 690. But "strategic choices made after *less than complete* investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." (Emphasis added.) *Id.* at 691. In the end, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." (Internal quotations omitted.) *Hinton v. Alabama*, 571 U.S. 263, 273 (2014), quoting *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010), quoting *Strickland* at 688.

{¶ 64} The Supreme Court has long referred to the American Bar Association's Standards for Criminal Justice "a[s] guides to determining what is reasonable" in this context. *Strickland* at 688. In relevant part, the ABA Standards state that "[d]efense

counsel's investigative efforts should commence promptly and should explore appropriate avenues that reasonably might lead to information relevant to the merits of the matter." ABA Standards for Criminal Justice 4-4.1(c) (4th Ed.2017).  The Standards also note that adequate preparation for court proceedings "will often include: reviewing available documents; considering what issues are likely to arise and the client's position regarding those issues; how best to present the issues and what solutions might be offered; relevant legal research and factual investigation; and contacting other persons who might be of assistance in addressing the anticipated issues."  ABA Standards for Criminal Justice 4-4.6(a).

{¶ 65} It is difficult to see how intentionally opening the door *with* this relevant knowledge or blindly opening the door *without* it could satisfy these prevailing professional norms for the criminal defense bar or common sense.  And, so, I believe that, regardless of whether counsel knew why the police were unable to find pornographic images on the phone, their remarks on the matter during opening statements could not have been reasonable trial strategy where they risked opening the door to harmful testimony that impacted their own credibility before the jury and their client's appearance of guilt.  For that reason, I would conclude that trial counsel's opening remarks regarding the contents of the phone constituted deficient performance.

{¶ 66} While I disagree with the majority and would find the record sufficient to conclude that trial counsel rendered deficient performance during the proceedings below, I ultimately concur with the conclusion reached by the majority because I agree Mr. Fischer was not prejudiced by his attorney's conduct.

———————————